JACOB LEU & SONS v. MAYER, SELLS & CO.

AGENCY, *Evidence of—Erroneous Instruction.* The mere declarations or acts of a supposed agent, not accepted or approved by the alleged principal, are inadmissible to prove agency; and where the authority of an agent is at issue, an instruction that, where third parties believed from the conduct of the supposed agent that he had authority and acted upon that belief, the principal would be bound, is error.

*Error from Pawnee District Court.*

ACTION by *Jacob Leu & Sons* against *Daniel Mayer* and others. At the April term, 1890, the defendants had judgment. The plaintiffs come here. The facts are set forth in the opinion.

*H. C. Johns, Thomas W. Johns,* and *Wm. G. Fairchild,* for plaintiffs in error:

The bookkeeper, Keyes, was a special agent, with instructions to secure plaintiffs' claim due them by Mayer, Sells & Co., and had no authority to release Sells and Thorp, and any agreement to that effect (if made) was not binding on these plaintiffs, but wholly void.

The rule is well settled that a special agent does not bind his employer or principal unless his authority be strictly pursued. Paley, Agency, 199; *Loudon, etc., v. Savings Bank,* 36 Pa. St. 503. See, also, *Mussey v. Beecher,* 57 Mass. 517; *Relief Ass'n v. Post,* 122 Pa. St. 597; *Grim v. Bonnell,* 78 id. 152; *Whiting v. Lake,* 91 id. 349; *Hays v. Linn,* 7 Watts

(Pa.), 525; *Insurance Co. v. Schultz*, 82 Pa. St. 46; *Stollenwerck v. Thacker*, 115 Mass. 224.

"The mere declarations of one who professes to be an agent are not competent evidence to establish his agency." *French v. Wade*, 35 Kas. 391. See, also, *St. L. & S. F. Rly. Co. v. Kinman*, 49 Kas. 627; *Streeter v. Poor*, 4 id. 412; *Craighead v. Peterson*, 72 N. Y. 283; *Hurley v. Watson*, 68 Mich. 531.

"A principal is not bound by the acts of his agent, unless authorized, or unless his own acts and representations estop him from denying the authority." *Lewis v. Comm'rs of Bourbon Co.*, 12 Kas. 186. See, also, *Kane v. Barstow*, 42 Kas. 465.

The facts in *Banks Bros. v. Everest*, 35 Kas. 687, are widely different from those of the case at bar.

While the testimony of Mr. Leu and the special finding of the jury show that Keyes had authority only to "secure" plaintiffs' claim, yet the court says to the jury that, if they believe from all the evidence Keyes had authority to settle the debt, he was also authorized to release Sells and Thorp.

Instructions should be applicable to the facts in evidence, and when not, and the jury are probably misled, the judgment will be reversed and a new trial granted. *Mo. Pac. Rly. Co. v. Pierce*, 33 Kas. 61; *Zimmerman v. Knox*, 34 id. 245; *Insurance Co. v. Thorpe*, 40 id. 255; *Lorie v. Adams*, 51 id. 692. There was no evidence or fact in proof of any authority in Keyes to release Sells and Thorp—nothing to justify this instruction complained of.

The opinion of the court was delivered by

JOHNSTON, J.: Jacob Leu & Sons, wholesale dealers in hardware, at Atchison, sold goods to Mayer, Sells & Co., who were retail dealers in hardware at Larned, Kas. In August, 1888, Mayer, Sells & Co, owed Jacob Leu & Sons, upon two promissory notes and an open account, $730.79, with certain interest which had accrued. At the latter date,'the firm of Mayer, Sells & Co., which was composed of Daniel Mayer, George A. Sells, and A. A. Thorp, dissolved, Mayer pur-

chasing and taking possession of the entire partnership stock. At the time of the dissolution, the firm was indebted to the First National Bank, at Larned, in the sum of $2,700, and, to secure this debt, Mayer executed a chattel mortgage on the entire stock. A second mortgage was executed by Mayer to Sells, which was not placed upon record. The plaintiffs, hearing of the dissolution and change of owership, sent their bookkeeper, Keyes, to Larned, as they say, to look after their claim, and "with instructions to secure the same from the partners owing them." He obtained a chattel mortgage upon the entire stock of goods, which was made second to that given to the bank. The bank was authorized to take immediate possession of the goods mortgaged, and sell the same, which it at once proceeded to do, and only realized from the sale of the entire stock about $1,600. Jacob Leu & Sons then brought this action against all the members of the firm of Mayer, Sells & Co., to recover the amount of their claim. Sells and Thorp only were served with summonses, and their answer admitted the copartnership, and that the indebtedness had accrued, but alleged as a defense that a settlement had been made by which the plaintiffs agreed to look to Mayer alone for the debt, provided he would give a second mortgage upon the entire stock of goods to secure the same; that such mortgage was actually given, and that Sells and Thorp were thereby released.

At the trial, the defendants offered testimony to the effect that, when Keyes came to Larned, he agreed that if Sells would surrender the second mortgage which had been given to him, and permit the firm of Jacob Leu & Sons to get from Mayer a mortgage upon the entire stock of goods which should stand next in priority to that of the bank, he would release Sells and Thorp and look to Mayer alone for the payment of the debt. The plaintiffs denied that there was any release of any member of the firm, and denied also that Keyes had any authority to release or discharge anyone from the debt. It may be remarked that the notes of the firm were not canceled or surrendered.

One of the principal questions in the case was whether the bookkeeper, Keyes, had authority to release Sells and Thorp from their admitted indebtedness. The defendants contended that he was a general agent, with authority to release, while the plaintiffs contended and offered testimony to show that he was a special agent only, sent out for the single purpose of securing the debt from all the partners owing the same. In submitting the case to the jury, the court instructed them as follows:

"If you believe, from a preponderance of all the evidence in this case, that this agent, Keyes, came here authorized by the firm of Jacob Leu & Sons to settle the debt, and at that time he agreed with Sells and Thorp, in consideration of Sells canceling his mortgage, and in consideration of Mayer giving him a new mortgage, a second mortgage on this stock of goods, he would release his claim against Sells and Thorp, then you should find for the defendants Sells and Thorp; but before you find for defendants Sells and Thorp, you should also find, from a preponderance of all of the evidence in this case, that this agent, Keyes, was authorized by the firm of Jacob Leu & Sons to make the arrangement with Sells and Thorp which he did make with them, or that his conduct as agent of Jacob Leu & Sons was such as to lead Sells and Thorp to believe that he was authorized to make this arrangement with them to settle their debt, and that in good faith Sells and Thorp acted upon their belief that he had that authority."

The trial resulted in favor of the defendants, and the last clause of the above instruction is the principal ground assigned for reversal. As the authority of Keyes was a disputed question of fact, the importance of the instruction is easily seen. According to the testimony of plaintiffs, Keyes was in no sense a general agent. It does not appear that he had ever acted as the agent of plaintiffs in any transaction with the defendants, or that he had ever been employed to adjust or settle claims with defendants or anyone else. The authority to secure the claims from the defendants would hardly warrant him in releasing one or more of them. (*Scully v. Dodge*, 40 Kas. 395; *Organ Co. v. Lasley*, 40 id. 521; *Deatherage v.*

*Henderson*, 43 id. 684; 1 Am. & Eng. Encyc. of Law, 357.) If Keyes had only limited authority, those who dealt with him were bound to inquire, and must be held to know the extent of the authority conferred. (*Bohart v. Oberne*, 36 Kas. 284.) Whether the authority given was broad enough to warrant a release, was a question for the jury, and, as has been seen, the court charged that such authority might be found from the conduct of the agent. This instruction was clearly erroneous. In determining the liability of the principal, the question in some cases is not what authority was intended to be given to the agent, but what authority was a third person dealing with him justified, from the acts and sayings of the principal, in believing was given to the agent. (*Banks Bros. v. Everest*, 35 Kas. 687.) While the acts of the principal will sometimes estop him from denying the authority of an agent who oversteps the limitations imposed upon him, it is clear that the agency or authority cannot be proven by the unauthorized or unaccepted conduct of the alleged agent. In numerous cases it has been held that the fact of agency cannot be established by the declarations of the alleged agent, and testimony of his acts or conduct is of no greater value for that purpose. It has been said that the rule of law bearing on this question is, that neither the declarations of a man nor his acts can be given in evidence to prove that he is the agent of another. (*Streeter v. Poor*, 4 Kas. 412; *French v. Wade*, 35 id. 391; *St. L. & S. F. Rly. Co. v. Kinman*, 49 id. 627.)

For this error the judgment must be reversed, and the cause remanded for another trial.

All the Justices concurring.