MIDLAND NATIONAL BANK, *Appellant*, v. SCHOEN.

### Division One, July 9, 1894.

1. **Partnership**: AGENCY: NOTICE.   The authority of one partner to bind the firm is governed by the law of agency.   Within the range of the firm business, one may act for all, as to persons having no notice of any limitations on the implied authority.   Beyond the scope of the partnership, one partner may bind the other where the latter would be bound under the general law of principal and agent.

2. ———: ———: NOTES: USE OF FIRM NAME.   One partner invested the other with a general authority to use the firm name upon notes for his individual purposes.   A third person advanced money for such notes on the faith of that authority, and the first partner was held liable on the notes.

3. ———: ———: ———: ———. On the facts just mentioned, it is not essential to a recovery on such notes to show that the signing partner was authorized to use the firm name on the particular notes sued upon. If they were given pursuant to a general authority, unrevoked, the liability would be the same.

4. ———: ———: ———: ———. Where a note is given by a firm for the debt of one partner, it may be lawfully renewed by any one of the partners without altering the firm's liability.

5. ———: AUTHORITY OF PARTNERS: COURSE OF BUSINESS. The course of business between members of a firm may tend to show the authority of one partner to act for and charge the partnership.

*Appeal from Clay Circuit Court.*—HON. J. M. SANDUSKY, Judge.

REVERSED AND REMANDED.

*Lathrop, Morrow, Fox & Moore* and *James E. Lincoln* for appellant.

(1) When a party to a suit is on the witness stand it is proper to interrogate him as to contradictory answers given by him at the time when his deposition was taken in the same suit. Thompson on Trials, sec. 831; *Wiseman v. Railroad*, 30 Mo. App. 516. (2) When a note is given for the individual debt of one, two or more partners with the consent of all the partners, it then becomes a partnership obligation, and either one of the partners has the right to sign the firm name for a renewal of such obligation, upon its maturity. *Tilford v. Ramsey*, 37 Mo. 563. (3) Where one of a firm habitually uses the firm name in giving notes for his individual indebtedness, with the knowledge and consent of his partners, and a person acts upon the faith of such firm signature, the note, as a matter of law, is binding upon all of the partners. *Irwin v. Williar*, 110 U. S. 499; *Hayner v. Crow*, 79 Mo. 293; *Johnson v. Hurley*, 115 Mo. 513; *Tanner v. Hall*, 1 Pa. St. 417; Bates on Partnership, sec. 363;

*Levy v. Payne,* Car. & Mar. 453. (4) Where one partner has knowledge that his copartner has used the firm name for his individual benefit, and fails, within a reasonable time, to repudiate the transaction, he is held in law to have ratified it, and is bound by it. Bates on Partnership, sec. 367; *Rouben v. Cohen,* 48 Cal. 545; *Roberts v. Barrow,* 53 Ga. 314; *Sweetser v. French,* 2 Cush. 309; *Foster v. Andrews,* 2 Pa. 160; *Woodward v. Winship,* 12 Pick. 430. (5) As applied to the use of a partnership for his individual benefit, the true rule is that, where one of two innocent persons must suffer by the act of a third party, he shall suffer who has been the cause or occasion of the confidence or credit reposed in such third party. *Hayne v. Crow,* 79 Mo. 293. Papers and records in other cases against defendant upon similar notes, where he failed to appear at the trial, were improperly excluded. 1 Thompson on Trials, sec. 490; *Gunn v. Todd,* 21 Mo. 303; *Collins v. Mack,* 31 Ark. 684; *Ayres v. Ins. Co.,* 17 Iowa, 176; *Brown v. Jewett,* 120 Mass. 215; *Cook v. Barr,* 44 N. Y. 156.

*Gates & Wallace* for respondent.

BARCLAY, J.—This is an action upon two promissory notes; the first dated September 8, 1890; the second, September 27, 1890, each payable at ninety days.

The notes were ostensibly executed by Louis A. Schoen, Bertha Schoen and Schoen Bros. to plaintiff.

The action was begun in Jackson county against all the makers, including George J. Schoen, who was charged to be liable as a member of the firm of Schoen Brothers. But he denied liability, and caused the removal of the case to another county by change of venue, where the issues as to him were tried.

His answer denied under oath the facts charged in the petition, except the incorporation of plaintiff and the partnership of George J. and Louis A. Schoen. He positively denied that he executed the paper sued upon, or authorized its execution.

The reply put in issue the new matter of the answer.

The cause was tried with the aid of a jury. There was a verdict for defendant.

Plaintiff moved for a new trial without success, and then, after judgment, brought the case to the supreme court by appeal, after the usual exceptions, preserving the points now relied upon.

The evidence of plaintiff tended to prove the following facts:

The Armour Brothers Banking Company began dealing with Louis Schoen as early as 1886. In 1887, the president of that company had an interview with defendant at the time his brother Louis wished to renew a note then under discount. The brothers Schoen were partners in the drug trade at Kansas City; but Louis informed the bank that the money to be raised on the paper was not on account of the regular requirements of the drug store.

The president of the bank then sent for defendant, George J. Schoen, and the interviews which followed are thus described by the former as a witness:

"When the first note became due, he" (Louis) "came in and wanted to renew that note. I said to him that I wanted to know from George if he felt and acknowledged the responsibility before I would renew the note; and he went and brought Mr. George Schoen and I had a talk with George about it, and I told him that Louis was making 'Schoen Bros.' on that kind of a note, and I wanted to know from him whether he recognized his responsibility on that class of notes, and he

said he did, and I said all right and the note was made.

"*Q.* You will tell the jury whether on the faith of what Geo. Schoen told you at that time Armour Brothers Banking Company, up to the time of its sale to the Midland National Bank, continued to discount paper for Louis Schoen, with Schoen Bros. on it as makers and indorsers. *A.* They did.

"*Q.* Do you remember when any notes came due of this character after the time of this conversation with Geo. Schoen relative to the payment of any of these notes on which the names of the firm brothers appeared? *A.* I did.

"*Q.* Tell the jury what the conversation was. *A.* I could not exactly repeat word for word; but when these different notes came due I wanted to see about it. I would go over to their store, and sometimes Louis would not be there and I would talk to George.

"*Q.* When you would go over to the store to see about these notes that were due and were unpaid, and you would find Louis there and find George there, state what conversation passed between you about them. *A.* I would tell them I wanted the notes fixed up and put in shape, and he would tell me that they would be fixed up as soon as he could see Louis.

"*Q.* About how many times did you probably have a conversation of that nature with George? *A.* I could not tell about that.

"*Q.* Several times? *A.* When I went, I went expecting to see Louis; but a great many times he would be out.

"*Q.* Tell the jury whether George Schoen repudiated the authority he had given for Louis Schoen to sign the name of Schoen Bros. on his individual paper. *A.* Not at all."

Armour Brothers Banking Company transferred its business and good will to the Midland National

Bank, January 1, 1889. After that transfer, the former president of the Armour Banking Company became vice-president of the plaintiff.

The paper which the Armour Banking Company had on hand (made by Louis A. Schoen, with the name of Schoen Bros.) was transferred to the Midland National Bank as a part of the assets of the older banking company.

At the time this transfer was made to the Midland National Bank and this paper was turned over, the president of the plaintiff bank was informed as to the authority given by defendant to Louis in regard to the use of the firm name for his individual purposes; and the notes were thereafter renewed from time to time.

The bank officers testified that but for the statements made by defendant the funds represented by the paper in suit would not have been loaned to Louis.

Other evidence was given, without objection, showing that notes, similar to those in suit, had been negotiated by Louis Schoen in 1889, to other parties, to the number of, at least, twenty, all of which were payable at the plaintiff bank, and were met or renewed as they matured.

The evidence on the part of the defendant need not be particularly stated. It contradicted that of plaintiff in many of its essential particulars.

The substantial question of the present appeal arises upon the rules of law which the court laid down for the guidance of the jury.

The following instruction was given at the instance of defendant, viz:

"The court instructs the jury that one member of a partnership has no authority to execute a promissory note in the name of the firm, except for matters connected with the firm business, and has no authority to sign the firm name to a promissory note as security for

himself and his individual benefit, unless authorized so to do by the other partner, and in that case the burden of proof rests upon the plaintiff to show by a preponderance of the evidence that the defendant, George J. Schoen, authorized his partner, Louis A. Schoen, to sign the firm name of Schoen Brothers to the note sued on in the first count of plaintiff's petition, and unless the plaintiff has established that fact by the greater weight of evidence, your verdict must be for the defendant, George J. Schoen, on said first count of the petition.

"That the burden of proof rests upon the plaintiff to show by a preponderance of the evidence that the defendant, George J. Schoen, authorized his partner, Louis A. Schoen, to sign the firm name of Schoen Brothers to the note sued on in the second count of plaintiff's petition, and unless the plaintiff has established that fact by the greater weight of the evidence, your verdict must be for the defendant, George J. Schoen, on said count of the petition."

The court refused the following instruction, asked by the plaintiff, viz.:

"3. If the jury believe from all the facts and circumstances detailed in evidence that the defendant, George Schoen, authorized his brother to sign the firm name of Schoen Bros. to the notes sued on in this case, or to the notes prior to these sued on, given to plaintiff or to Armour Bros. Banking Company, or if you believe from the evidence that the defendant, knowing of such use of the firm name, acquiesced therein, then your verdict will be for the plaintiff, and it makes no difference what was done with the money realized from the notes, nor whether the plaintiff knew what use was to be made of such proceeds."

We treat these two instructions—the former, given;

the latter, refused—together, as they thus present the gist of the controversy plainly.

The action of the court on these instructions seems to us to have restricted the plaintiff's basis of recovery within too narrow limits.

On principle, the authority of one partner to charge his fellow by an act in the name of the firm is referable to the law of agency.

Within the range of the partnership business, one may act for all, in the absence of knowledge (or its equivalent) on the part of those who deal with the one, of any actual bounds to his power to act for all.

Beyond the scope of the firm's affairs, however, there is nothing to prevent one partner binding another where the latter would be bound by the former under the general law of principal and agent.

Coming at once to the facts in judgment, if George Schoen invested Louis with general authority or power to bind him (George) by notes to the bank in the name of Schoen Bros., for his (Louis') individual benefit, then George would be liable for the acts of Louis within the scope of that authority while it lasted.

If the jury gave credit to the evidence for plaintiff, above quoted, to the effect that, in 1887, on being informed that Louis wished, for his own purposes, to renew a note, executed in the name of Schoen Bros., George declared (in reply to questions by the bank manager) that he (George) "recognized his responsibility on that class of notes," then he surely would be liable for such notes put out thereafter by Louis to the bank, and taken for value by the latter on the faith of that authority.

It was not essential to the plaintiff's right of recovery that George should have authorized Louis to

sign the firm name to the particular notes in suit, as implied by defendant's instruction.

If he had previously given Louis general warrant to the bank to raise funds for his own purposes in that manner, he was bound to respond for Louis' acts in accordance with that authority.

Viewing the defendant's instruction most favorably, it was, at least, likely to convey the impression that authority to sign the very notes sued on was required to fix liability on George.

· The refusal of plaintiff's third instruction indicates that the learned trial court probably intended to so rule.

The third instruction asked would have required the jury to find for plaintiff if the earlier notes (which the evidence tended to show were renewed by those in suit) were authorized by George Schoen, or if he acquiesced in the general use of his name by Louis after knowledge of it.

That instruction certainly was sound, and no equivalent for it is found in the series given by the court or for the defendant.

None of those tendered by plaintiff was given.

In *Tilford v. Ramsey* (1866), 37 Mo. 563, it was held that where a note was given by a firm for a debt of one partner, with the consent of all, it might be lawfully renewed by any one of the partners without altering the original liability of the firm.

That was one idea contained in the plaintiff's refused instruction which the instructions given did not embody; yet plaintiff was entitled to have it put to the jury.

The course of business of the Schoen Bros. in respect of notes of similar form and purpose, furnished evidence tending to prove the acquiescence of George

in the use of paper so drawn, for the benefit of Louis. *Hayner v. Crow* (1883), 79 Mo. 293.

Plaintiff was entitled to the benefit of that application of the law of agency to the facts before the jury.

Considering the case generally on its merits, we think those rulings on the instructions can not be held harmless. They involve error, and the result reached did not, in our opinion, correct the error.

The judgment is reversed and the cause remanded for a new trial. BLACK, C. J., and BRACE and MACFARLANE, JJ., concur.