TAYLOR, Respondent, v. SARTORIOUS, Appellant.

St. Louis Court of Appeals, February 4, 1908.

1. AGENCY: Partnership: Limited Authority of Agent. The power conferred by law on one partner to act as the agent for his partnership may be limited by other members of the firm just as the authority incident to any other agency may be restricted by the principal, and the restriction becomes binding on all who are apprised of it.

2. ————: Actual Authority: Apparent Authority. One dealing with an agent with knowledge that the agent is acting under definite limited authority cannot be protected in contracts made with such agent within the scope of the apparent power of the agent but not within his actual power.

3. ————: ————: ————: Alteration of Power of Attorney by Agent. A principal is responsible for the acts of one who is his agent, where responsibility is asserted on the ground of apparent authority of the agent, only in case the principal himself has clothed the agent with the appearance of authority, and not when the agent's conduct creates the appearance. Where an agent's authority was expressed in a written instrument with a clause limiting that authority on a slip of paper attached, and the agent detached the clause limiting his authority and exhibited the document to a party with whom he made a contract within the scope of the instrument in that condition, but beyond his authority as limited by the clause detached, the act of the agent in detaching the limiting clause was akin to forgery and the principal was not bound by his contract although the slip containing the limiting clause was easily detached.

4. CONTRACTS: Joint and Several Contracts: Statutory Provision. A contract signed by several partners giving certain authority to one of their number is a joint and several contract and any one or more of the signers of such contract may be sued separately. [Sections 889 and 892, Revised Statutes 1899.]

5. RES ADJUDICATA: Joint and Several Contract: Identity of Parties. Where an action was brought against some of several signers of a joint and several contract and there was judgment for defendant upon the issue as to whether they were liable upon the contract, the judgment was res adjudicata in

an action by the same plaintiff against another of the several signers who was not party to the first action; this on the ground that if judgment in the latter case should be rendered against the defendant, his co-signers would be liable to contribution and they woula be deprived of the benefits of the judgment in the former case in their favor.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

REVERSED AND REMANDED.

*Theodore C. Eggers, Joseph H. Trembley* and *Rassieur, Schnurmacher & Rassieur* for appellant.

(1) A judgment rendered in favor of one or more joint and several obligors is a bar to a suit against another co-obligor if the grounds 'of defense set up in both cases are shown to be identical; that is, a discharge of the obligation or other defense equally applicable to all obligors. Spencer v. Dearth, 43 Vt. 98; Hill v. Morse, 61 Me. 541; Townsend v. Riddle, 2 N. H. 448, 450; Hunt v. Terril's Heirs, 7 J. J. Marsh (30 Ky.) 67. (2) A successful defense by one of two or more joint and several debtors in an action against him, if not made on a ground purely personal to him, will bar any future action by the same plaintiff on the same obligation against any other of the debtors. Black on Judgments, sec. 73; 24 Am. and Eng. Ency., 764.

*Jamison & Thomas* and *Charles F. Krone* for respondent.

(1) Under the statute and decisions of this State, all contracts which, by the common law, are joint only, shall be construed to be joint and several, and in all cases of joint obligations and joint assumptions of copartners or others, suits may be brought and prosecuted against any one or more of those who are liable. It was, therefore, no error in the court below to exclude the papers and judgment in a suit brought by the plaintiff against other defendants than Emelia Sar-

torius and Jean B. Texier, in which said case judgment was rendered in favor of the defendants. R. S. 1899, secs. 889, 892; Lloyd v. Tracy, 53 Mo. App. 175; Simpson v. Schulte, 21 Mo. App. 639; State ex rel. v. Tate, 109 Mo. 265; Glenn v. Hunt, 120 Mo. 265; McLaurain v. Monroe, 30 Mo. 462; Savings Bank v. Cottay, 70 Mo. 150; Insurance Co. v. Landes, 50 Mo. App. 116; Armstrong v. Prewett, 5 Mo. 476; Phillips v. Fitzpatrick, 34 Mo. 276. (2) The court did not err in instructing the jury that plaintiff was entitled to verdict if appellant was bound by the power of attorney introduced in evidence. Hamilton v. Insurance Co., 94 Mo. 353; Flourney v. Andrews, 5 Mo. 513; Harris v. Woody, 9 Mo. 113. (3) The respondent not only relied upon the power of attorney, but also on the broader proposition that the appellant was liable by reason of her having associated herself with the other parties to form a corporation, and having agreed with others to conduct business prior to the incorporation under the name of the Sorento United Coal Mining Company. Martin v. Farrell, 79 Mo. 410; Richardson v. Pitts, 71 Mo. 130.

STATEMENT.—This action was originally instituted before a justice of the peace to recover the price of a leasehold and personal property sold by J. S. Turley and Conrad Bock to the Sorento United Coal Mining Company, alleged to have been a partnership composed of certain individuals, among them the appellant, Mrs. Sartorious. The sale of the property occurred July 17, 1902, and was conducted in behalf of the Sorento Company by Jean B. Texier, secretary and treasurer of the firm. The original defendants in the suit were Emelia Sartorious, Albert and Adolph Kahl, E. P. Gracey and Louis Hauser. No service was obtained upon any defendant except the appellant. The case went to the circuit court on appeal and a trial there resulted in a judgment against her for five hundred dollars, from which the present appeal was prosecuted to

this court. The defendants owned land in the State of Illinois, on which there was believed to be a deposit of coal. They, in connection with Texier, arranged to incorporate a company to be known as the Sorento United Coal Mining Company, to mine coal on the land and to buy and sell coal in the city of St. Louis. Proceedings to incorporate were set on foot, but before they were completed the defendants abandoned the enterprise. Meanwhile an office had been opened in the Mermod-Jaccard Building in the city of St. Louis, and various advertisements and prospectuses issued in which all the projectors of the intended corporation participated. Texier was appointed manager or agent pending the incorporating of the company and given authority to do such acts and perform such business as was necessary for the benefit of the proposed corporation. This authority was conferred by a written document, the terms of which are in dispute, and the issue as to what the terms were is the principal one in the case. Pursuant to the powers given to him as agent, Texier looked about the city of St. Louis for a coal yard and office where business might be conducted. Turley and Bock were the owners of a leasehold of premises suitable for that purpose, on which there were a building, stable and ice house. They also owned an ice wagon, a second-hand storm buggy and harness and boxes for coal, all situate on the leasehold premises. They were willing to sell the unexpired term, but only provided they sold the building and articles mentioned. Texier purchased the term and properties on credit for the company for five hundred dollars, taking a written bill of sale to the Sorento Company. This transaction occurred July 17, 1902. The complaint alleges that the appellant and the other parties originally sued as co-defendants with appellant, "by their authorized agent" signed the bill of sale in which it was agreed they should pay five hundred dollars for

the property. Turley and Bock afterwards assigned their interest in the contract, that is, their demand for the price of the property, to respondent, who instituted this action to recover the price. One point made is that the writing appointing Texier agent did not authorize him to purchase the ice house or ice wagon; but the testimony goes to show these properties could be used in connection with the coal business, that, as said, the leasehold could not be purchased without buying them and that they could be readily sold for what they cost. There is much testimony tending to prove appellant and the other projectors of the company knew of the pending purchase of the property in controversy; also of other arrangements made by Texier as agent of the company, and that everything was done with their knowledge; but as to their knowledge there is a discrepancy in the evidence. Turley and Bock swore that in negotiating for the purchase Texier told them of the intention of himself and his associates to incorporate a company, that the formation of the company was in a preliminary stage but meanwhile the projectors of it desired to buy and acquire immediate possession of coal yards and other accessories of the contemplated business. After the present action was instituted before the justice of the peace and dismissed as to all the defendants but Mrs. Sartorious, because the others could not be served with process, another action on the same demand was instituted by plaintiff before a justice of the peace, against the other defendants, to-wit: Albert and Adolph Kahl, E. P. Gracey and Louis Hauser. The trial of the latter action resulted in a judgment for those defendants. This occurred after the present action had been appealed to the circuit court, and on the trial of it in the latter court, appellant's counsel offered in evidence the record of the proceedings and judgment in the case against the Kahls and others, in proof of the defense that the issue in this case had been finally

adjudicated and determined against the plaintiff, and hence that the judgment in the case against the Kahls and others was a bar to the present case. The offer of the record was accompanied by a tender of evidence to prove the issues involved herein regarding the terms of the written appointment of Texier to act as agent, were tried and adjudicated in the other action. The principal issue was as to whether or not the writing under which Texier purported to act in making the purchase from Turley and Bock was changed after it was signed by Mrs. Sartorious, and the other projectors of the Sorento Company, so as to distort its meaning as originally executed. It should be stated that this writing was exhibited to Turley and Bock by Texier as his authority for buying the property in controversy in the name of the Sorento Company. The document is as follows, the words in dispute being shown parenthetically:

"This agreement, made and entered into this 17th day of May, 1902, by and between Jean B. Texier and Mrs. Emelie Sartorious of the city of St. Louis and State of Missouri, and Albert Kahl, Adolph Kahl and Louis Hauser of the State of Illinois, Witnesseth:

"Whereas the parties heretofore mentioned are desirous of organizing a coal mining company for the purpose of developing certain coal properties in the State of Illinois, and marketing the products thereof; it is hereby understood and agreed that said company shall be organized and incorporated under the laws of the State of Illinois, and the name of said company shall be 'Sorento United Coal Mining Company.'

"It is hereby further understood and agreed that the said Texier shall have the right, power and authority to do such things and acts and perform such business as in his discretion it is necessary for the benefit and welfare of this company, pending the incorporation of the said company. Any acts so performed are hereby

ratified by the parties hereto (subject to the approval of all parties concerned).

"In witness whereof we have hereunto set our hands and seals this day and year first above written.

| (Signed) | "JEAN B. TEXIER | (Seal) |
| | "EMELIE SARTORIOUS | (Seal) |
| | "ALBERT KAHL | (Seal) |
| | "LOUIS HAUSER | (Seal) |
| | "ADOLPH KAHL | (Seal)." |

The main issue of fact is whether the words "subject to the approval of all parties concerned" were contained in the document when it was signed and acknowledged. As to this the testimony is conflicting, Texier, the attorney who drew the paper and the notary who took the acknowledgment, testifying those words were not in it, and Mrs. Sartorious and other witnesses that they were. The substance of the testimony of the latter witnesses on the issue was that the document was originally drawn without those words; that all the parties concerned were unwilling to sign it in its original form and, therefore, Texier wrote the words in question on a slip of paper and fastened it to the writing first drafted, between the words "ratified by the parties hereto" and the words of the attesting clause "In witness whereof," etc. Some of the witnesses said the slip of paper was pasted on the original paper, others that it was pinned to it, and still others that it was fastened on with a clamp. There were no holes in the original paper to indicate that a slip had been pinned on it and neither were there traces of paste on it. Turley said regarding the sale to Texier: "After several interviews on the matter we arrived at a price that we would sell for, and the question of payment came up and he then produced a power of attorney." Here the witness identified as Texier's power of attorney the instrument of May 17, 1902, which he said Texier exhib-

ited to him and thereupon the bill of sale of date June second was executed and possession of the property delivered to Texier. On cross-examination Turley swore he read Texier's power of attorney and thought it was sufficient to justify the latter in contracting for the property. Bock swore he saw the written authority of Texier before the sale occurred, but that he left the transaction to Turley. The corporation never having been completed, it was charged to be a partnership and appellant sued as one member of the firm. She put the allegation of partnership in issue by an affidavit which denied she was a partner. On this issue the court instructed that if individuals associated themselves together for the purpose of forming a corporation, and prior to the incorporation, the company conducted business within the scope contemplated, omitting to take the necessary steps to incorporate the company, each of the members of the association would be liable to third parties for debts contracted in conducting the business prior to incorporating; that if the jury believed that before June 2, 1902, appellant, Texier and others, had associated themselves for the purpose of incorporating a company under the laws of Illinois, under the name of the Sorento United Coal Mining Company, and for the purpose of conducting the business of mining coal in Illinois and selling it at retail in St. Louis, and before the company was incorporated said parties carried on a coal business in St. Louis under the name of the Sorento United Coal Mining Company, and while conducting said business, Texier, in the name of said company, signed, as its secretary and treasurer, the contract with Turley and Bock by which the property in controversy was sold to said company, that thereafter Turley and Bock assigned their said contract to plaintiff, and that no part of the five hundred dollars to be given for the price of the property in controversy had been paid, the jury should find the issues for plaintiff

for said sum. As to the authority or power of attorney of Texier to act for the Sorento Company, the court instructed that if the jury believed appellant signed said paper and subsequent to its execution Texier, pursuant to its terms, conducted a coal business in St. Louis under the name of the Sorento United Coal Mining Company, and while conducting said business signed the name of said company to the contract of purchase made with Turley and Bock, and said contract had been assigned to plaintiff and no part of the consideration paid, the jury should find the issues for respondent, unless they found the authority conferred on Texier by the document of May 17, 1902, had been revoked prior to June 2, 1902, and that Turley and Bock or either of them, knew of such revocation, or by ordinary care might have learned of it under the circumstances shown in evidence. As to the slip of paper fastened to the original power of attorney, the court instructed that if the jury believed said slip was pasted on or attached to the document, but further believed said slip was so attached as to be easily detached, and had been detached prior to the time the power of attorney was exhibited to Turley and Bock, and that the latter did not have any knowledge or information, until after they had sold the property in question, that said slip of paper was part of the power of attorney, the verdict must be for respondent. For the appellant the court instructed that if the jury found she had revoked the power of attorney given to Texier prior to June 2, 1902, the date of purchase of the property in controversy, and that neither Turley or Bock had notice of such revocation when such purchase was made, the respondent could not recover; that if the jury found the document of May 17, 1902, had attached to it when executed, the slip of paper containing the words "subject to the approval of all parties concerned," and the document with said slip attached was shown to Turley

and Bock, or either of them, prior to June 2, 1902, respondent was not entitled to recover unless the jury found and believed from the evidence that appellant consented to the purchase of the property in controversy; that in determining whether or not the slip in question was attached to and made part of the agreement of May 17, 1902, and likewise in determining whether or not said agreement, with said slip attached, was shown to Turley and Bock prior to the sale of the property in controversy, the jury should take into consideration all the facts and circumstances in evidence, as well as the document itself. Of its own motion the court instructed the jury that whether or not Texier deceived or defrauded his business associates was immaterial to any issue in the case and the jury should disregard all such testimony, because there was no evidence that Turley or Bock was a party to, or connected with, a fraud on the part of Texier toward his associates. A verdict was returned in favor of respondent for the amount demanded and interest. The assignments of error in the brief for appellant are first, that the issues involved are *res judicata;* second, that Texier had no authority to make the purchase from Turley and Bock and bind appellant for the price, and, third, that Turley and Bock did not act in good faith in contracting with Texier, but participated in the fraud intended to be perpetrated by Texier.

GOODE, J. (after stating the facts).—1. An attentive study of the evidence has discovered none except what relates to the alleged alteration of the written authority of Texier, which tends to prove he attempted to perpetrate a fraud against appellant and her associates in business, and none at all that if a slip bearing the disputed words was attached to the writing empowering him to act as agent, and he subsequently detached it for a fraudulent purpose, either Turley or

Bock knew these facts when they dealt with him, or other facts which would cause a prudent man to distrust the apparent grant of authority contained in the writing. It follows that the court properly instructed the jury there was no evidence that either Turley or Bock was connected with any fraud of which Texier may have been guilty in connection with the purchase of the property in controversy.

2. We are of the opinion that the first instruction for respondent is erroneous in making appellant liable if she and her associates did business in coal in St. Louis pending the formation of the proposed corporation, and in the conduct of such business Texier signed the bill of sale in the name of the contemplated Sorento United Coal Mining Company. The complaint counts on express authority from appellant and her associates to Texier to sign the bill of sale, and not on his apparent authority, as a member of the alleged partnership, to bind the other members. The complaint says, "defendants by their dutly authorized agent, signed the agreement." This statement shows the pleader had in mind and meant to declare on, the writing under which Texier assumed to act and not on a constructive agency. Moreover the written authority of Texier was exhibited to Turley and Bock, and they relied on it in dealing with him instead of on any implied authority he might have as a partner. The so-called power of attorney was shown to Turley and Bock and, according to their own testimony, they deemed it conferred power on Texier to make the purchase. Hence, even if he was a copartner of appellant, Turley and Bock had no right, when dealing with him, to rely on his constructive authority as such, when the precise extent of his actual authority was known to them. The power conferred by law on one partner to act as the agent for a firm, may be limited by the other members of the firm, just

as the authority incident to any other agency may be
restricted by the principal and the restriction become
binding on all who are apprised of it. [Midland Bank
v. Schoenberg, 123 Mo. 650, 27 S. W. 547; 1 Bates, Part-
nership, sec. 315.] If a person relies on an express
authority to one member of a partnership to act for the
firm, he must deal with the member within the terms
of the authorization, as in other sorts of agencies.
[Bates, sec. 368.] The case was submitted to the jury
on two inconsistent hypotheses; that appellant was li-
able if the express written authority exhibited by Texier
and relied on by the sellers, was genuine, and liable,
too, even if it was false, provided appellant and Texier
were partners and he bought the property in dispute
in the name of the firm. The latter proposition is equiv-
alent to holding that a party knowing an agent is acting
under an authority of definite scope, nevertheless may
make contracts within the scope of the apparent powers
the agent may be presumed to possess by one ignorant
of his actual powers. This is not the law as was ruled
in a case where the point was raised on facts analogous
to those before us. [Mechanics Bank v. Schaumberg,
33 Mo. 228.]

3. In the third instruction for respondent, the
jury was directed to give a verdict for him, if appellant
and her associates so loosely attached the slip contain-
ing the words "subject to the approval of all parties
concerned" to Texier's power of attorney as originally
drawn, that the slip could easily be detached and it was
detached before the document was shown to Turley and
Bock, who were ignorant of the change of the document
when they dealt with Texier. This instruction per-
mitted a recovery on the ground that appellant's care-
lessness in the preparation of the instrument, enabled
Texier fraudulently to make a showing of authority
beyond what he possessed. We suppose the idea is that
she is estopped to dispute his power to bind her. A

principal is responsible for the acts of one who is his agent, or appears to be, if responsibility is asserted on the ground of apparent authority in the agent to do the acts, only in case the principal himself has clothed the agent with the appearance of power and not when the agent's own conduct creates the appearance. [Edwards v. Dooley, 120 N. Y. 540; Leu & Sons v. Mayer, Sells & Co., 52 Kan. 419.] It is true that this false appearance may sometimes be traceable to the negligence of the principal; that is, to such conduct as a principal of ordinary prudence would have avoided, and which would suffice to induce one of ordinary prudence to believe the agent's power is of a given scope. But we know of no decision, the principle of which would render Mrs. Sartorius answerable for an act done by Texier outside the grant of power conferred on him by the document as it was when signed by her, merely because a part of said document could be easily detached from the rest. If, in truth, Texier detached the words "subject to the approval of all parties concerned," thereby leaving his powers apparently unrestricted by the signers, his act was akin to forgery, and he alone responsible for it. It is hardly possible for a principal to prevent an agent from increasing his appearance of authority by forgery or other fraudulent practices. Attaching the slip to the rest of the instrument so loosely that it could easily be separated, would facilitate a fraudulent attempt by Texier; but the like danger would be entailed by a written authority to an agent containing blank spaces which he could fill in with words enlarging his authority. Nevertheless it is not the law that a principal is liable simply because such spaces are left and fraudulently filled in by an agent so as to enlarge his powers. The case is different from that of printed forms of negotiable instruments containing blanks which are usually filled by writing words in them, like the rate of interest. Some decisions

hold that when blanks of this character are left in an instrument by the maker, and subsequently filled by the payee, the maker is bound. [3 Randolph, Com. Paper (2 Ed.), secs. 708, 1768, 1770.] This rule, in so far as it exists, refers to customary blank spaces which are habitually filled, and not to every blank space which may be left between lines in drawing an instrument. [Capital Bank v. Armstrong, 62 Mo. 59; Mechanics Bank v. Valley Packing Co., 4 Mo. App. 200; s. c., 70 Mo. 643; McGrath v. Clark, 56 N. Y. 39; Franklin Life Ins. Co. v. Courtney, 60 Ind. 134.] Texier was not authorized to alter the so-called power of attorney in any respect, and if he altered it so as to change its sense, this was a fraud for which the signers cannot be held. [State v. Kroeger, 47 Mo. 552; Puffer v. Smith, 57 Ill. 527; Strough v. Gear, 48 Ind. 100; Robb v. Insurance Co., 40 Atl. 969.] As a general proposition the alteration of an instrument after delivery vitiates it. [Kelly v. Thuey, 143 Mo. 422, 45 S. W. 300; Mockler v. St. Vincent Inst., 87 Mo. App. 473.] Both parties have briefed the case on the theory that the words on the slip were sufficient, if in fact they were part of the power of attorney, to withhold from Texier the power to buy the property in dispute, without first obtaining the approval of his associates; and we shall adopt this theory in disposing of the appeal. Accepting it as the proper interpretation of the words on the slip, we hold that if, when Mrs. Sartorius signed the power of attorney, the limiting words were attached to it, she cannot be held liable for Texier's contract merely because the slip could be detached easily.

4. The next question for determination is whether or not the court erred in excluding the petition, proceedings and judgment in the case brought by respondent before a justice of the peace against Albert and Adolph Kahl, E. T. Gracey and L. Houser, who were originally defendants in this case. It is contended for

appellant that the judgment of the justice of the peace is *res judicata* of the main issue involved in the present case; that is to say, whether or not the authority of Texier was limited by the words "subject to the approval of all parties concerned." In offering in evidence the judgment and proceedings in the other cause, counsel for appellant offered to prove the action against said other parties was on a petition in all respects identical with the one in the case at bar, that the same defenses now urged were urged in said case, except the defense of *res judicata,* and that, after a full hearing, the justice gave judgment in said cause in favor of the defendants and against Taylor, from which judgment no appeal was taken; that the defenses urged in said cause were not personal to the defendants but were common to all the parties to the action, as well as to the parties to the alleged power of attorney on which respondent relies to hold appellant. As stated heretofore Kahl, et al., were originally sued in the present case, and later they were sued separately and the judgment obtained which is now pleaded in bar. Respondent contends it is no bar because the other action was not against appellant. In other words, that one of the elements essential to the defense of former adjudication, is lacking, inasmuch as the judgment in the action was between different parties from the one in which it is pleaded. The general rule that a judgment is conclusive only between the parties to an action and their privies has a few exceptions not material to the present discussion, because the case does not fall within them. The written authority under which Texier acted, was joint and several, and hence the case is not controlled by the rule that a judgment for or against one of two or more joint obligors bars an action against the other obligors. [1 Herman, Estoppel and Res Judicata, sec. 469, p. 563.] Our statutes make such contracts both joint and several and give respondent the right to main-

tain separate suits against any one or more of the signers. [R. S. 1899, secs. 889, 892.] Because the contract is of this nature it is said the verdict and judgment against respondent in an action to which the appellant was no party, even if it was on the merits of the case, is no bar; and, indeed, this proposition is so analogous to the rules which ordinarily govern the plea of *res judicata* that argument to the contrary is at first view rather startling. But on attentive consideration, it will be found to be reasonable. What was determined in the other case according to the offer of proof, was that the power of attorney to Texier contained the words restricting his power to make contracts which should bind the signers. Apart from the defense of *res judicata,* this was precisely the issue which was to be determined in the present case; and inasmuch as determination of it against appellant and payment of the judgment by her, would entitle her to contribution from the Kahls and other signers of the instrument, it is apparent that the verdict in their favor might avail them nothing. If respondent recovers from appellant, the latter might recover contribution from her cosigners, thereby nullifying the verdict given in their favor in respondent's suit against them. We are of the opinion that the statutes making contracts joint and several, were not intended to cause such a result. If there were, say six signers of a promissory note, who were sued separately by the payee and each pleaded the defense of payment, and in five actions their defense was upheld by verdicts, these verdicts would go for naught if, perchance, the sixth jury found against the defense—a manifestly unjust consequence. The purpose of the statutes making contracts joint and several, was to allow the promisee to sue the promisors separately and prevent a judgment obtained against one, but without satisfaction, being a bar to an action against the others. It was not the purpose to give the

promisee as many trials of an issue going to the merits of liability on the obligation, as there are promisors, while denying the latter the benefit of verdicts given for them unless every possible verdict on the contract is in their favor. This question was gone into in the most exhaustive manner and discussed in every phase, in Spencer v. Dearth, 43 Vt. 98, and a conclusion reached in accord with what we have said. Our remarks are based on the opinion in that case, of which the gist is found in these words: "Where it has been determined in an action against one of two or more promisors, joint and several, that the note or other claim had been paid in full, such adjudication and judgment will constitute a full defense to a subsequent suit, brought on the same claim against the other promisor, grantor or surety, and be conclusive as against any one who was a party of record in the former action, though the party in the second suit pleading the former recovery in bar, was not a party of record in the former action and had no notice of it before rendition of the judgment therein; and for want of such notice might not have been bound, had the judgment been the other way." It would not, of course, be contended that a judgment in favor of respondent and against one of the signers of the power of attorney, would be conclusive against the other signers. The reason is that the other signers would have had no opportunity to present their case—would not have had their day in court and a chance to examine and cross-examine the witnesses, or appeal. [Womack v. St. Joseph, 201 Mo. 467.] But it fairly may be presumed that the respondent, in endeavoring to make good his action against the Kahls and others brought forward all his evidence on the issue of what terms the power of attorney contained and cross-examined the witnesses produced against him. He could do this as well in an action against one signer, as in an action against all. In the Vermont case the

issue alleged to have been adjudicated in a prior proceeding, was whether or not the note in question had been paid; but we can see no stronger reason for holding the defense of payment, when once determined against a payee, is *res judicata* in a subsequent action, than for holding the same way regarding the issue of the alteration of an instrument. The essential fact is that the very question put in issue was tried before and determined against the suing party in an identical action except there is a different defendant; an action wherein the plaintiff had the opportunity to bring forward all his proof and to cross-examine the witnesses who swore to the alteration. The Vermont case has been followed in other jurisdictions and its doctrine adopted by text-writers. [Hill v. Morse, 61 Maine 541; Townsend v. Riddle, 2 N. H. 448, 24 Am. & Eng. Ency. Law (2 Ed.), 764; Hunt v. Terrell's Heirs, 7 J. J. Marsh. (30 Ky.) 67.] The question of who is concluded by a judgment has been obscured by the use of the words "privity" and "privies," which in their precise technical meaning in law, are scarcely determinative always of who is and who is not bound by a judgment. Courts have striven sometimes to give effect to the general doctrine that a judgment is only binding between parties and privies, by extending the signification of the word "privies" to include relationships not originally embraced in it; whereas the true reason for holding the issue *res judicata,* does not necessarily depend on privity, but on the policy of law to end litigation by preventing a party who has had one fair trial of a question of fact, from again drawing it into controversy. In the Vermont case the court found a certain shade of privity had existed between the signer of the note who claimed the defense of payment was *res judicata,* and the other signer in whose favor that issue had been determined in a previous action. This was not privity in the ancient sense, but at most merely

analogous to it. The fact which ought to be controlling is that the signers of the power of attorney who were defendants in the first case brought by respondent and whose defense then prevailed, will be deprived of the benefit of the judgment in their favor, if plaintiff prevails in this case, as they will be answerable to appellant in contribution. We think the views expressed in Womack v. St. Joseph, and other Supreme Court decisions are not inconsistent with the conclusion that the adjudication in the first case should estop the plaintiff in this one.

The judgment is reversed and the cause remanded.