THE COCA COLA COMPANY, a corporation of the State of Delaware, *v.* PEPSI-COLA COMPANY, a corporation of the State of Delaware.

*(April* 16, 1934.)

LAYTON, C. J., HARRINGTON and RODNEY, J. J., sitting.

*Hugh M. Morris* and *Alexander L. Nichols* for plaintiff.

*Aaron Finger* (of Richards, Layton and Finger)˙ for defendant.

Superior Court for New Castle County, Summons Case, No. 76, September Term, 1932.

RODNEY, J., delivering the opinion of the Court:

We shall consider the questions in the order as above adopted, assuming that the sufficiency of the plea must be determined upon its own averments.

■ First. We do not think it necessary to state in the plea the decree heretofore entered in the Court of Chancery in *haec verba*. The plea avers that on July 29, 1933, two cases were pending in the Court of Chancery between the plaintiff in this cause and two of the actors charged with substitution in the declaration, to-wit, Loft, Incorporated, and Happiness Candy Stores, Inc.; that the Court had jurisdiction of the persons and subject matter; that a decree was entered dismissing the bills of complaint after hearing on the merits; that the plaintiff is the same person as the complainant in the Court of Chancery and is acting in the same capacity; and that the issues in this case are identical with the issues decided against the plaintiff in the actions in the Court of Chancery.

In our opinion, the plea is sufficiently descriptive and certain. The defendant could have been more prolix; it could have set out substantially all the matters covered by the bill and answers in the Court of Chancery, but the ultimate result would have been the same. The defendant

affirmatively sets out that the "issues in the above entitled cause are identical with the issues decided against the plaintiff in said actions in the Court of Chancery." The plaintiff has demurred to this plea. The demurrer admits all well pleaded allegations so if the identity be well pleaded it will, for the purpose of the present discussion, be taken as admitted. The identity of the issues is a question of fact which must be proven at the trial. All details showing identity of issues are matters of evidence. We are of the opinion that the plea is not defective for the reason just discussed. *Wythe v. Salem,* 30 *Fed. Cas., page* 770, *No.* 18,121; *Richardson v. Jones,* 58 *Ind.* 240; *Wilson v. Vance,* 55 *Ind.* 584; *Ellis v. Staples,* 9 *Humph. (Tenn.)* 238; *Rynearson v. Parkhurst,* 88 *Ind.* 264.

Second. The plaintiff denies the validity of the plea of *res judicata* because of the lack of mutuality in the estoppel.

The defendant recognizes the general rule:

"That estoppels must be mutual and that one of the essentials of an estoppel by judgment or *res judicata* is that both the litigants must be concluded by the judgment or it binds neither."

The defendant, however, relies upon an established and clear exception to the rule to the effect that:

"If the defendant's responsibility is necessarily dependent upon the culpability of another, who was the immediate actor and who, in an action against him by the same plaintiff for the same act, has been adjudged not culpable, the defendant may have the benefit of that judgment as an estoppel even though he would not have been bound by it had it been the other way."

In support of this exception the defendant cites *Portland Gold Mining Co. v. Stratton's Independence, Ltd. (C. C. A.),* 158 *F.* 63, 16 *L. R. A. (N. S.)* 677; *Bigelow v. Old Dominion Copper Co.,* 225 *U. S.* 111, 32 *S. Ct.* 641, 56 *L. Ed.* 1009, *Ann. Cas.* 1913E, 875; *Brobston v. Darby,* 290 *Pa.* 331, 138 *A.* 849, 54 *A. L. R.* 1285; *Jenkins v. Atl. Coast Line,* 89 *S. C.* 408, 71 *S. E.* 1010; *Sawyer v. City of Nor-*

*folk,* 136 *Va.* 66, 116 *S. E.* 245; *McFaddin, etc., Land Co. v. Texas, etc., Land Co. (Tex. Civ. App.),* 253 *S. W.* 916; *Atkinson v. White,* 60 *Me.* 396; *Muntz v. Algiers, etc., Rwy. Co.,* 116 *La.* 236, 40 *So.* 688; *Chicago, etc., R. Co. v. McManigal,* 73 *Neb.* 580, 103 *N. W.* 305, 107 *N. W.* 243; *Emma Silver Mining Co. v. Emma Silver Mining Co. of New York (C. C.),* 7 *F.* 401.

The plaintiff tacitly admits the existence and force of the exception, but insists that in every case cited by the defendant there existed between the defendants in the two actions some privity, some liability over, some derivative connection or a relationship of some nature so as to come within the exception to the rule requiring mutuality and which is lacking in the present case. A careful examination of all the authorities cited to us, or disclosed by independent research, does not disclose any case supporting the claim of the defendant where no connection is shown between the successful party to the first proceeding and the party to the second proceeding seeking to rely upon the plea of *res judicata.*

Unanswered by the authorities cited, the question remains, however, as to the necessity of mutuality of estoppel under the facts here present.

This Court has given to the plea of *res judicata* its most careful consideration.

In determining the question as to whether a person not a party to a prior proceeding may take advantage of the disposition of such case in a subsequent action by a plea of *res judicata* directed against an adversary who had been a party to a first proceeding, we have attempted to discover the reason for the rule "that estoppels must be mutual or that both litigants must be alike concluded by a judgment or it binds neither."

Where a general rule is suggested as having application to a number of classes of cases the true reason for

the rule must bear investigation so as to show its application to each individual class.

We have, of course, found the exception to the rule relied upon by the defendant "that where the liability of the defendant is altogether dependent upon the culpability of one exonerated in a prior suit upon the same facts when sued by the same plaintiff" the mutuality of the estoppel is not required. This, however, furnishes a mere exception to the rule and, so far as we have found, is evidenced only by cases where some privity or relationship existed between the defendants in the two actions. We are interested in a case where no privity is shown to exist and our duty is to determine the necessity of such privity. In 24 *A. and E. Encl.* (*2d Ed.*) 731, is given the only concrete basis for the rule that we have found. There it is said:

"The rule that a judgment or decree concludes only parties or privies is based on that fundamental principle that no man can be deprived of his property except by due process of law, a principle which in the United States has been embodied in the Federal Constitution and in the Constitution of the several States."

In a great majority of cases this given reason may be satisfactory, but it is immediately apparent that it cannot always be so for it is obvious that it can have application only when the doctrine is invoked against one who had not been a party to the former proceeding. This reason fails when applied to one who had been a party to the former proceedings, for he has not been deprived of any due process in the presentation of his rights or claims.

■ The doctrine of *res judicata* is primarily one of public policy and only secondarily of private benefit to individual litigants. It draws its strength not so much from the private advantage of the party seeking to invoke it, but its roots lie in the principle that public policy and welfare require a definite end to litigation when each of the parties has had a full, free and untrammelled opportunity of presenting all of the facts pertinent to the con-

troversy. The primary object of *res judicata* (public policy) is based upon the maxim *reipublicae ut sit finis litium*—it concerns the commonwealth that there be a limit to litigation. 2 *Freeman on Judgments,* § 626; 38 *Yale Law Journal* 299; 33 *C. J.* 267. Many authorities include as a basis of *res judicata* the subordinate maxim *nemo debet bis vexari pro una et eadem causa*—no one ought to be twice vexed for one and the same cause. 2 *Freeman on Judgments,* § 626; 38 *Yale Law Journal* 299; 45 *C. J.* 1379. It would seem, however, that this latter maxim has application only when the party is "vexed" with litigation, as a defendant, and not when he, himself, institutes it.

The subject of *res judicata* may generally be divided into two main and distinct classes. The first class would include those cases where there is some privity or liability over between a party to the first suit and a party to the second suit. In this group would fall cases of master and servant, principal and surety, parties primarily and secondarily liable, and other like classifications. This group would be subdivided according to the character of the privity and the manner in which the estoppel was raised, but it is obvious that the facts of the present case do not call for a consideration of this group.

The second class of cases include those where there is no liability over, either way, between the party pleading *res judicata* or against whom it is pleaded, and any party to the prior suit. In this group, so far as the facts appear the present controversy must be placed.

The classification now considered must, however, be subdivided, for it would seem that two distinct principles are involved

(a) Where the plea of *res judicata* is raised by a party to the prior suit against one who was not such a party;

And

(b) Where the plea of *res judicata* is raised by one

not a party to the prior suit against one who was such a party.

(a) This first class of cases gives full force and scope to the historical reason of the requirement of mutuality, viz., that no person should be deprived of his property without due process of law. The person against whom the plea is made was not a party to the former proceeding and there is no liability over either way with any person that was a party to the first suit. There is no privity, if privity be given its generally accepted meaning of having "mutuality or successive relationship to the same right of property." Questions under this heading could often arise when two joint tort feasors are successively sued by the same plaintiff. A holding that a judgment against the first would be *res judicata* as to the second could be sustained on no sound principles.

(b) A very different situation arises in the case where *res judicata* is pleaded by one not a party to the first suit against one who was such party. This is our present case.

It is quite apparent that a direct and decisive conflict now arises between the two principles; of requirement of mutuality of estoppel on the one hand, and, on the other, the basic principle of *res judicata,* viz., the limitation to a party to one full and free opportunity to try the merits of his case.

The present defendant pleading *res judicata* was not a party to the former proceeding and the judgment in the former proceeding did not bind it so there is no mutuality. The present plaintiff, against whom the *res judicata* is pleaded is alleged to have been the unsuccessful plaintiff in the former proceedings where the issues were alleged to have been identical with those here involved. We are not now passing upon the actual existence, as a fact, of the identity of the issues in the two proceedings, for that identity must be proven. But assuming the identity of the

issues, we are of the opinion that a plaintiff who deliberately selects his forum and there unsuccessfully presents his proofs, is bound by such adverse judgment in a second suit involving all the identical issues already decided. The requirement of mutuality must yield to public policy. To hold otherwise would be to allow repeated litigation of identical questions, expressly adjudicated, and to allow a litigant having lost on a question of fact to re-open and re-try all the old issues each time he can obtain a new adversary not in privity with his former one.

■ There are few cases dealing with the precise question here discussed where the lack of privity is established, for most courts have seized upon slight evidence of relationship or privity upon which to base a mutual estoppel. As said in *Taylor v. Sartorious*, 130 *Mo. App.* 23, 108 *S. W.* 1089, 1094:

> "The question of who is concluded by a judgment has been obscured by the use of the words 'privity' and 'privies,' which in their precise technical meaning in law are scarcely determinative always of who is and who is not bound by a judgment. Courts have striven sometimes to give effect to the general doctrine that a judgment is only binding between parties and privies by extending the signification of the word 'privies' to include relationships not originally embraced in it, whereas the true reason for holding the issue *res judicata* does not necessarily depend on privity, but on the policy of the law to end litigation by preventing a party who has had one fair trial of a question of fact from again drawing it into controversy."

The legal writers have differed upon the subject here discussed. Berkley Cox in 9 *Va. Law Reg.* (*N. S.*) 241 ably presents the result adopted by this Court; see also 35 *Yale Law Journal* 607. The writers of these articles urge that mutuality of estoppel should not be required where there is identity of issue and there has been a judgment on the merits and the one against whom the former judgment is invoked was a party to the former suit or privy to it.

A former Chief Justice of Pennsylvania (Von Moschizesker) writing in 38 *Yale Law Journal* 299, at 302, while recognizing the existence of the distinction above

suggested, does not wholly approve of it for the reason that it would seem to compel a litigant in the first trial to establish or defend his position to the utmost, and, it is contended the law should recognize that a litigant might not conduct a case as against one adversary with the same zeal as might be evidenced against another. "This," says the learned Chief Justice, "is probably the reason why res judicata has been held to apply only as between parties to the original suit or their privies."

We do not think it a sufficient answer to the maxim based upon public policy and looking toward the conclusion of litigation.

The question herein discussed can, possibly, seldom arise except, as here, upon the pleadings. In many cases involving several tort feasors, like *Bigelow v. Old Dominion Copper Co.*, *supra*, the ultimate issue is the individual liability of each tort feasor and identity of this issue cannot exist in successive proceedings against different defendants.

█ Three. We now come to the remaining ground of·demurrer, viz., that the plea purports to be a defense to the entire cause of action, but in fact answers only a part.

There seems to be no dissent from the principle that where a defendant, by the commencement of his plea, purports to answer the whole declaration, but in fact files a partial answer, applicable to part only, it amounts to an insufficient pleading and will be bad on demurrer. 1 *Chitty* 471; *Gould's Plead.* 335; *Perry's Com. Law Plead.* 300; *Thomas v. Heathern*, 2 *Barn. & Cress.* 477, 107 *Eng. Rep.* 460; *Earl of St. Germain v. Willan*, 2 *Barn. & Cress.* 216, 107 *Eng. Rep.* 364. The same rule applies where the plea purporting to answer all of the several counts of a declaration does in fact answer certain counts only. *Van Ness v. Hamilton*, 19 *Johns.* (*N. Y.*) 349; *Florida East Coast R. Co. v. Peters*, 72 *Fla.* 311, 73 *So.* 151, *Ann. Cas.* 1918*D*, 121, 137; 16 *Pl. & Pr.* 577; 49 *C. J.* 211.

In *Cox v. Columbus & W. Ry. Co.*, 91 *Ala.* 392, 8 *So.* 824, 825, it is said:

"The elementary rule that a plea professing to answer the whole complaint, and answering only a part, is bad on demurrer, applies when the complaint contains more than one count, and the plea, professing to answer all, answers only some of them."

The demurrer to the seventh plea is sustained.