# HANS N. GAMMEL v. ERNST & ERNST AND OTHERS.[1]

July 15, 1955.

No. 36,433.

[1]Reported in 72 N. W. (2d) 364.

*Bundlie, Kelley & Maun, Gerhard J. Bundlie,* and *Merlyn C. Green,* for appellant.

*Dorsey, Colman, Barker, Scott & Barber, Joseph H. Colman, Henry Halladay,* and *Horace Hitch,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Action by Hans N. Gammel against defendants individually and as a copartnership known as Ernst & Ernst and engaged as public accountants for damages resulting to him from their alleged negligence and fraud in the examination and audit of the books and records of Sanitary Farm Dairies, Inc., for the year 1944. Defendants' motion for dismissal at the close of plaintiff's case was granted on the grounds (1) that the evidence would not support a finding that defendants were guilty of fraud; and (2) that while the evidence might support a finding of negligence nevertheless, because defendants were acting as quasi arbitrators in making the audit, they were immune from liability therefor. This is an appeal from an order denying plaintiff's motion for a new trial.

The facts are as follows: On June 6, 1929, plaintiff as president and principal stockholder of Midway Creamery Company entered into an agreement individually and on behalf of said corporation to merge the latter with Sanitary Farm Dairies, Inc., a Minnesota

corporation, under a new Delaware corporation to be formed and also known as Sanitary Farm Dairies, Inc., in which plaintiff was to hold 437 shares of common stock. As a part of the merger agreement the new corporation agreed, without limitation as to time, to purchase plaintiff's stock:

"* * * at a sum of money per share equal to twelve times the net earnings per share of said common stock for the preceding twelve months; * * * In the event of inability of the parties to agree upon earnings * * * for said preceding twelve months an audit shall be made by an independent auditor, the cost of which shall be borne by the parties equally, and the earnings determined by such audit shall be controlling."

On January 5, 1945, plaintiff notified the corporation that he desired to sell his shares of stock to it in accordance with the agreement and designated the calendar year 1944 as the "preceding twelve months" period for determination of earnings upon which the sale price was to be based. Thereafter, an audit report for such year was submitted showing total net earnings after taxes of $97,707.68. Because of plaintiff's conviction that this was erroneous, he notified the corporation that he would not accept the report as the basis for the computation of the sales price on his stock.

Subsequently, on November 14, 1945, a written agreement was executed by the plaintiff and by Sanitary Farm Dairies, Inc., which provided that:

"* * * It is AGREED by and between the parties hereto that the firm of *Ernst & Ernst,* accountants of the City of Saint Paul, Minnesota, *shall be retained and hired for the purpose of making an audit of all the books and records of the second party,* or such part thereof as may be requested by either party *for the purpose of ascertaining and determining the net earnings per share of the common stock of the second party for the twelve (12) months of the calendar year 1944.*

"It is FURTHER UNDERSTOOD AND AGREED that the cost of making such audit shall be borne equally by the parties hereto, and that, when such audit has been made, it shall be controlling upon the net

earnings per share of the second party for the year 1944 and that thereupon the agreement of June 6, 1929 shall be carried out by the parties." (Italics supplied.)

The defendants were not a party to this agreement. Subsequently, by oral agreement they were employed by the parties thereto to perform the audit described. Before its commencement, a meeting was held by all parties at which it was discussed and its purpose made known to defendants and at which they were advised as to certain items in the prior audit which plaintiff wished checked with great particularity. In June of 1946 this audit was completed and a report thereon submitted to the parties disclosing earnings for the year 1944 of $180,602.90 before taxes.

On July 10, 1946, plaintiff's counsel wrote defendants and Sanitary Farm Dairies, Inc., repudiating this audit, and advising defendants that plaintiff would hold them accountable for any loss resulting to him because of the manner in which the audit was made in the event it was controlling under his stock sales agreement with the corporation. On August 6, 1946, he commenced action against the corporation in the United States district court, therein seeking determination of the correct earnings of the corporation for the year 1944 and contending that he was not bound by defendants' audit with respect thereto because of bias, gross mistake, and fraud in connection therewith.

In this action, a separate audit of the corporation books was made by Hines & Wilkerson, certified public accountants, who reported corporate earnings for the year in question amounting to $220,739.23 before taxes. The court thereupon referred the action to a special master, who submitted findings based on such audit and recommended judgment in favor of the corporation on all issues. The court refused to adopt the master's report and substituted its own findings and conclusions and ordered judgment that the audit of Ernst & Ernst was tainted with fraud and bias, and that the actual earnings of the corporation for the year in question amounted to $227,475.15 before taxes.

On appeal, the United States court of appeals reversed this determination (Sanitary Farm Dairies, Inc. v. Gammel [8 Cir.] 195 F. [2d] 106, 118) on the ground that the master's findings could not be set aside or held clearly erroneous "merely because of a difference in personal persuasion on the evidence or a dissatisfaction with the result reached." Accordingly, plaintiff was held bound to dispose of his stock on the basis of the audit submitted by defendants and subsequently brought this action against them for damages claimed to have been sustained in the sale because of their negligence and fraud therein.

On appeal plaintiff asserts that defendants are not quasi arbitrators and as such immune from liability for damages resulting from their negligence or fraud in making the audit and report; that they were engaged under ordinary employment contract to perform standard accounting and auditing services; and that, by virtue of the principles ordinarily applicable to such contracts, the duty rested upon them to perform such services with reasonable care and in good faith. Defendants reassert their claim of immunity as quasi arbitrators and contend that the issue of fraud is *res judicata,* since it was tried and determined adversely to plaintiff in the latter's action in the United States district court.

■ Ordinarily, the standards of reasonable care which apply to the conduct of auditors or public accountants are the same as those applied to lawyers, doctors, architects, engineers, and other professional men engaged in furnishing skilled services for compensation. Maryland Cas. Co. v. Cook (E. D. Mich.) 35 F. Supp. 160; City of East Grand Forks v. Steele, 121 Minn. 296, 141 N. W. 181, 45 L.R.A.(N.S.) 205, Ann. Cas. 1914C, 720. The imposition of such standards does not leave them without adequate protection since their liability in damages arises only as the result of methods or practices in the performance of their work which indicate lack of reasonable care, fraud, or bad faith and since they are entitled to a wide discretion in the selection of such methods and in determining which of several practices or principles is most sound or best suited for the work undertaken by them. Johnson v. Colp, 211 Minn. 245, 300 N. W. 791; Sjobeck v. Leach, 213 Minn. 360, 6 N. W. (2d)

819. In the instant case under these standards, unless defendants be held quasi arbitrators, they would be required to perform the services for which they were engaged in good faith and with reasonable care and competence and would be liable for damages occasioned by any failure to do so.

■ Defendants acknowledge that such standards apply to the services ordinarily furnished by them but as indicated above contend that, because of the agreement of November 14, 1945, between plaintiff and the corporation by virtue of which their report was to be binding on such parties, their status was that of *quasi arbitrators* in the performance of their work and hence entitled them to judicial immunity therein. The concept of judicial immunity from civil liability is rooted deeply in the common law. See, Floyd v. Barker, 12 Co. Rep. 23, 15 Eng. R. C. 37; Scott v. Stansfield, L. R. 3 Ex. 220, 15 Eng. R. C. 42. It rests upon considerations of public policy, its purpose being to preserve the integrity and independence of the judiciary and to insure that judges will act upon their convictions free from the apprehensions of possible consequences. Randall v. Brigham, 74 U. S. (7 Wall.) 523, 19 L. ed. 285; Brictson v. Woodrough (8 Cir.) 164 F. (2d) 107, certiorari denied, 334 U. S. 849, 68 S. Ct. 1500, 92 L. ed. 1772; Melady v. South St. Paul Live Stock Exchange, 142 Minn. 194, 171 N. W. 806; see, Pollock, Torts (15 ed.) pp. 83 to 85; 30 Am. Jur., Judges, § 43.

■ This immunity is not limited to the judiciary. "It also extends to quasi judicial officers. * * * to grand and petit jurors in the discharge of their duties, * * * to assessors upon whom is imposed the duty of valuing property for the purpose of levying taxes, * * * to commissioners appointed to appraise damages when property is taken under the right of eminent domain, * * * to prosecuting attorneys" (Linder v. Foster, 209 Minn. 43, 47, 295 N. W. 299, 301); to persons designated to act as arbitrators (Melady v. South St. Paul Live Stock Exchange, *supra;* Wilder v. Crook, 250 Ala. 424, 34 So. [2d] 832; Hutchins v. Merrill, 109 Me. 313, 84 A. 412, 42 L. R. A. [N. S.] 277, Ann. Cas. 1913E, 648; see, Russell, Arbitration [15 ed.] p. 196; 3 Am. Jur., Arbitration and Award, § 100; 6 C. J. S.,

Arbitration and Award, § 53) ; and in a number of decisions the English courts have applied its protective features to a class designated as "quasi arbitrators." Pappa v. Rose [1871] L. R. 7 C. P. 32; Tharsis Sulphur & Copper Co. Ltd. v. Loftus [1872] L. R. 8 C. P. 1; Boynton v. Richardson [1924] Weekly Notes 262; Finnegan v. Allen [1943] 1 K. B. 425.

■ In most of these cases judicial immunity was held dependent upon some contractual provision which called for the exercise of independent judgment or discretion by a person acting as an arbitrator and which made his determinations binding upon the parties selecting him. But in the absence of such contractual provisions, or where the agreement does not call for the exercise of judicial authority, ordinarily the person selected to perform skilled or professional services is not immune from charges of negligence and is required to work with the same skill and care exercised by an average person engaged in the trade or profession involved. East Grand Forks v. Steele, 121 Minn. 296, 141 N. W. 181, 45 L. R. A. (N. S.) 205; Cowles v. Minneapolis, 128 Minn. 452, 151 N. W. 184; Royal Ins. Co. v. Ries, 80 Ohio St. 272, 88 N. E. 638; Bruce v. James, 12 Dom. L. R. 469; Rogers v. James [1891] 8 T. L. R. 67.

■ Here, we do not feel that defendants' contract of employment clothed them with judicial immunity as quasi arbitrators. Both under the contract between plaintiff and the corporation, and by virtue of the oral agreement under which defendants were later hired, it was provided merely that they were to make an examination and audit of the corporation books and a report as to its earnings for the year 1944. As in all such contracts of employment, it must be implied that such services were to be furnished with reasonable care and in good faith without fraud or collusion ; that standard accounting practices would be followed; and that, where different theories as to proper practices might become involved, they would follow the one they deemed fairly applicable to the situation presented. We do not feel that their knowledge of the fact that prior to their employment plaintiff and Sanitary Farm Dairies, Inc., had agreed to be bound by their report would eliminate such require-

ments or permit them unlimited latitude in the care to be exercised in conducting the examination and audit described. The language of the United States court of appeals in the prior action (Sanitary Farm Dairies, Inc. v. Gammel [8 Cir.] 195 F. [2d] 106, 114) seems particularly applicable on this point. There it was stated:

"We do not think it soundly can be said that the legal effect of this was to constitute Ernst and Ernst as an 'umpire' or arbiter, with an obligation to hear, consider and produce a result in relation to the contentions of the parties. Rather, as suggested above, it seems to us that what the contract provided for was the *making of a sound accountancy appraisal of earnings, by an independent auditor, through the use necessarily of proper applicable auditing process, but with the ultimate result inherently to be produced by the judgment, discretion and skill which the selected expert would be called upon to exercise—not as an arbiter but as an accountant-evaluator * * *.*" (Italics supplied.)

Defendants were not parties to the agreement between plaintiff and Sanitary Farm Dairies, Inc., and it would seem unreasonable to hold that they may now resort to it as a means of escape from the normal obligations applicable in an employment contract for accounting services or that by virtue thereof *for all purposes* they became quasi arbitrators entitled to judicial immunity for their actions. It would follow that the trial court erred in holding that the issue of negligence must be withdrawn.

■ Aside from the charges of negligence, the issue of fraud must be considered. In the federal court action between plaintiff and Sanitary Farm Dairies a claim of fraud and bad faith in the conduct of the audit was litigated and determined adversely to plaintiff. While the present defendants were not parties to that action, it is the same issue—dependent on the same evidence—that plaintiff seeks to litigate once more in the present proceedings. Defendants assert that the judgment in the prior action constitutes a bar thereon. They recognize the general rule that a former judgment is not *res judicata* in a subsequent action unless the parties in the latter are the same or in privity with those in the former proceeding

(Halloran v. Knoph, 243 Minn. 120, 66 N. W. [2d] 551; Twin City Federal Sav. & Loan Assn. v. Radio Service Laboratories, Inc. 242 Minn. 10, 64 N. W. [2d] 32; see, 10 Dunnell, Dig [3 ed.] § 5172; 30 Am. Jur., Judgments, § 222; 50 C. J. S., Judgments, § 601); but submit authorities defining an exception to this rule and assert that the facts in the instant case bring it within such exception. *E.g.,* Lawlor v. National Screen Service Corp. (3 Cir.) 211 F. (2d) 934, certiorari granted, 348 U. S. 810, 75 S. Ct. 42, 99 L. ed. 639; Bernhard v. Bank of America Nat. Trust & Sav. Assn. 19 Cal. (2d) 807, 122 P. (2d) 892; Coca Cola Co. v. Pepsi-Cola Co. 36 Del. 124, 172 A. 260. Thereunder, it is held that a plaintiff, who has selected his forum and presented his proof on an issue, is bound by the judgment rendered therein on such issue in any subsequent action, even though against another party, since public policy should not permit retrial of an issue each time a new defendant can be found. The governing principle applicable in such situations is expressed in Coca Cola Co. v. Pepsi-Cola Co. 36 Del. 124, 133, 172 A. 260, 263, as follows:

"* * * a plaintiff who deliberately selects his forum and there unsuccessfully presents his proofs, is bound by such adverse judgment in a second suit involving all the identical issues already decided. The requirement of mutuality must yield to public policy. To hold otherwise would be to allow repeated litigation of identical questions, expressly adjudicated, and to allow a litigant having lost on a question of fact to re-open and re-try all the old issues each time he can obtain a new adversary not in privity with his former one."

See, also, Bruszewski v. United States (3 Cir.) 181 F. (2d) 419; Laffoon v. Waterman S. S. Corp. (S. D. N. Y.) 111 F. Supp. 923; Eissing Chemical Co. v. People's Nat. Bank, 205 App. Div. 89, 199 N. Y. S. 342; Taylor v. Sartorious, 130 Mo. App. 23, 108 S. W. 1089. We have recognized this exception to the doctrine of mutuality otherwise essential to *res judicata* in Myhra v. Park, 193 Minn. 290, 258 N. W. 515; cf. Miller v. Simons, 239 Minn. 523, 59 N. W. (2d) 837.

Based on the facts described and the decisions cited, we hold that on the issue of fraud plaintiff has had his day in court; that the issue has been fully litigated and determined; and in consequence that any attempt to relitigate it in the present proceedings is barred.

Reversed and remanded for further proceedings in accordance with this opinion.

Reversed.

MR. JUSTICE CHRISTIANSON took no part in the consideration or decision of this case.

