203 A.2d 252 (1964)
Edward LIFMANN, Plaintiff,
v.
Harry ARONSON, Lawrence M. Aronson, Morris Draft, Seymour Rady, Clifford L. J. Siegmeister, Ben Cole, Saul Rubin, Donald Pollack, Charles J. Schaniel, Abe Fell, M. F. Lewis, Herman Segall, and Waltham Watch Company, Defendants.
Court of Chancery of Delaware, New Castle County.
August 28, 1964.
N. Maxson Terry and William H. Draper, Jr., Dover & James A. Thomas, Jr., of Lewis, MacDonald & Varian, New York City, for plaintiff.
Irving Morris and Joseph A. Rosenthal, of Cohen, Morris & Rosenthal, Wilmington, for defendants Harry Aronson, Lawrence M. Aronson, Morris Draft, Seymour Rady, and Waltham Watch Co.
MARVEL, Vice Chancellor.
Plaintiff claims to have been a stockholder of Waltham Watch Company since June 1961 and brings this suit derivatively for the alleged benefit of Waltham. He complains that the individual defendants Aronson, Draft and Rady, under the leadership of Harry Aronson, have controlled and improperly *253 managed the affairs of Waltham since 1959 so as to cause it compensable injury as hereinafter set forth. Plaintiff also charges that the above named defendants have conspired with the non-director Segall to conceal the true facts of the transactions complained of. He seeks joint and several accountings from the directors allegedly in control of the corporation as well as from the defendant Segall and the other named director defendants of Waltham.
The individual defendants Aronson, Draft and Rady as well as the corporation have appeared and filed a motion for summary judgment of dismissal of plaintiff's first and second causes of action on the ground that further judicial action on said causes is barred under the doctrine of res adjudicata, the claims therein asserted having been allegedly adjudicated in earlier New York and Delaware actions. Following an approved settlement in New York of the case of Fistel v. Aronson,[1] this Court granted summary judgment of dismissal of the Delaware consolidated Civil Action[2] Nos. 1159 and 1219 after finding that the allegations in the New York action and those asserted in the Delaware actions were identical in all material respects. This is the opinion of the Court on defendants' motion, it being assumed but not decided for the purposes of this motion that plaintiff is capable of bringing this suit.
In his first cause of action plaintiff alleges that from the year 1961 until the present the individual defendants have wrongfully concealed from Waltham and its stockholders the fact that they had improperly caused Waltham to assume certain contractual arrangements entered into by them with ten Swiss suppliers of watch movements. It is claimed that such undertaking was first saddled on Hallmark, Inc. when the individual director defendants were officers and directors of that corporation. The complaint goes on to allege that the individual defendants, having thereafter gained control of Waltham, caused Waltham to assume such improper obligation, said assumption having been designed and carried out in order to repay the Swiss suppliers for moneys advanced by them to the individual defendants to enable the latter to gain control of Waltham. The device used to bring about such repayment is alleged to have been a hidden premium consisting of 2.4 Swiss francs[3] charged on each of one million of watch movements to be purchased by Waltham from the Swiss suppliers over a term of five years. Plaintiff further alleges in his first cause of action that it had been orally agreed between the individual defendants and the Swiss suppliers that the premium referred to above should be hidden by being included on each invoice for watch movements as a payment "for research and development." According to plaintiff, the scheme outlined in his first cause of action resulted in a loss to Waltham of not less than $750,000, exclusive of interest payments, for which the individual defendants are individually and personally liable to Waltham. It is further contended that notwithstanding a purported settlement of litigation bearing on the matters complained of, Waltham has been further damaged in an amount in excess of $200,000 by reason of continuing payments being made under the improper premium arrangement referred to above.
While a second cause of action set forth in the complaint is concerned with the same matter complained of in the first cause of action, it is therein contended that the acts complained of resulted from a conspiracy entered into in January 1959 between the individual defendant directors and officers, *254 the defendant Segall and the Swiss suppliers for the purpose of concealing from Waltham's stockholders the improper premium arrangement alluded to in the first cause of action. Such second cause of action apparently seeks damages from the alleged conspirators in the same amounts sought in the first cause of action, namely $750,000 for damages sustained during the entire period of the allegedly continuing conspiracy and not less than $200,000 for the period from 1962 to date.
First of all, notwithstanding plaintiff's reliance on what he terms a plan of concealment as a basis for his suit, I am satisfied that the basic transaction here complained of was one of the subject matters of earlier stockholder complaints filed and adjudicated both in this Court and in the Supreme Court of New York, said complaints having sought relief from wrongs caused by the allegedly improper transfer of voting control of Waltham from the Axlers to the Aronsons, although such earlier complaints encompassed a number of other alleged breaches of fiduciary duty not mentioned in the present complaint. Thus, it was alleged in an uncontradicted affidavit filed on April 27, 1960 in the New York action of Fistel v. Axler[4] in support of defendants' motion for summary judgment that as an incident to transfer of the Axler stock carried out in connection with Mr. Harry Aronson's efforts to extricate Waltham from serious financial difficulties "* * * a group of approximately twelve Swiss watch suppliers designated Seymour Rady, Esq., an attorney of Chicago, Illinois, to act in their behalf in negotiations with the Axlers to purchase their stock of Waltham for a price not to exceed $650,000, provided that such purchase would be conditioned upon the net worth of Waltham, as determined by an independent audit, being shown to be not less than a stated minimum figure. * * *" (Para. 19, affidavit of Robert Schur). In fact, there is no real disagreement in the papers before me on defendants' motion as to the fact that a group of some ten or twelve Swiss watch manufacturers participated in a 1959 business transaction which led to the disposal by the Axlers of their 120,000 shares of Waltham and the loss on their part of voting control over the affairs of Waltham as part of a complicated arrangement which culminated in an exchange of Hallmark stock for that of Waltham. What plaintiff here seeks to counter, on his theory of concealment, are the inferences to be drawn from the fact that the plaintiffs in the New York actions failed in their efforts to establish that the Aronsons rather than the Swiss manufacturers were the true owners of the 120,000 Waltham shares. And while, to be sure, the first dispositive step in the case in which the Schur affidavit was filed was, perhaps by inadvertence, a severance and dismissal on the merits merely as to the Axlers, the charges concerning the Aronsons were later specifically dealt with judicially by the New York and Delaware courts. Thus, in the Delaware Fistel action, after a similar judgment as to the Axlers had been entered, the complaint was amended so as to plead in detail the same allegedly improper premium arrangement here complained of and such action (Civil Action 1159) was then consolidated with the Pohl action (Civil Action 1219) for the purposes of trial. Thereafter, after discovery had proceeded in both New York and Delaware, the several pending cases involving the remaining charges against the Aronsons were consolidated in the Supreme Court of New York and paragraph 19 concerning the acquisition of the 120,000 shares of Waltham stock owned by the Axlers and the arrangement for their payment through the alleged fraudulent device of a payment of 2.5 francs per movement disguised as a charge "* * * to cover research and development * * *", as set forth in the Delaware Fistel case, was incorporated in haec verba in the New York complaint in a similarly numbered paragraph.
*255 Meanwhile, however, general counsel for plaintiffs in the New York actions reached an agreement with counsel for the defendants whereby in return for dismissal of their consolidated action and the furnishing of releases the Aronson defendants agreed to transfer to Waltham 30,000 shares of Waltham stock, the equivalent of 150,000 shares of Waltham stock as of the time of their exchange for Hallmark shares in April 1959. Such proposed settlement was then referred to a referee for consideration. Having evaluated the various causes of action leveled against the Aronsons, including the one which charged "* * * the Aronsons with a plan to acquire control of Waltham with the use of Waltham's funds * * *", the referee reached the following conclusion and made the following recommendation as to such claim, namely, "* * * I conclude that the plaintiffs' second cause of action is not supported by the evidence submitted to me, nor has there been a showing of fraud * * *". The overall conclusion of the referee was that the proposed settlement was fair and adequate and that it should be approved and confirmed. Thereafter, the referee's report having been mailed to each stockholder of record of Waltham together with notice of a hearing date, such a hearing was held, the settlement was approved, the action dismissed with prejudice, and releases ordered to be given to the Aronson defendants. Finally, as noted earlier, on the basis of such judgment, this Court dismissed Civil Action Nos. 1159 and 1219 with prejudice.
Faced with the defense of res adjudicata, plaintiff does not attempt a collateral attack, professing that he does not "* * * seek to overturn the prior judgment of the New York court, or the subsequent judgment of this Court, based solely on New York's settlement * * *". He rather contends that he merely seeks to obtain relief for claims which were not dealt with in the prior litigation. However, I am satisfied that although plaintiff has made every effort to characterize his claim concerning the so-called hidden premium arrangement as different than that asserted in the earlier litigation, placing reliance on alleged oral contracts and on a so-called different theory of action, what he actually seeks is an opportunity to introduce additional trial evidence concerning a transaction which, in my opinion, has been put to rest in earlier litigation. This he may not do, Epstein v. Chatham Park, Inc., 2 Storey 56, 52 Del. 56, 153 A.2d 180. Plaintiff's grievances about the results of the earlier litigation would, if given the hearing he seeks, destroy the salutary effects of modern procedures for the settlement of stockholder derivative suits after notice to all stockholders of record. See Hornstein, Corporation Law and Practice § 731, and compare Barroway v. Reynolds (Del.Ch.) 176 A.2d 850. Finally, plaintiff's reliance on Darraugh v. Carrington, Sup., 50 N.Y. S.2d 481, aff'd 270 App.Div. 932, 62 N.Y. S.2d 241, is misplaced. In that case stockholders suing derivatively had not had their day in court in California on claims asserted in New York, it being pointed out in the opinion of the Appellate Division that prior to the entry of the California judgment relied on by defendants there was not "* * * an unequivocal calling upon the plaintiff in such action to introduce evidence in support of his claims."
To be sure, there may be error in the prior proceedings here relied on both as to facts and law, and a better settlement might perhaps have been made. Nonetheless, the New York judgment relied on by defendants, having become final after a settlement hearing, stands unimpeached, a final judgment on the merits rendered by a court of competent jurisdiction being conclusive as to the rights of the parties and their privies. There is no doubt but that the same evidence which would have successfully established the claim made in the earlier litigation based on allegedly improper methods used by officers and directors to gain control of 120,000 shares of Waltham stock would be required to establish the claim made here. Plaintiff's grievance *256 simply stated is that plaintiffs in the New York action were not sufficiently diligent and failed to unearth evidence which plaintiff professes to have now or to anticipate. This is no basis for a trial de novo. The point is, of course, that while counsel for plaintiffs in New York were commended by the referee "* * * for the zeal with which they pursued this cause of action by obtaining depositions and documentation in Switzerland * * *", such counsel were not satisfied with the evidence they developed in New York and Delaware discovery as a basis for trial. They thereupon negotiated an overall settlement which the referee agreed was fair and adequate and which the Supreme Court of New York approved. Such a judgment clearly has a res adjudicata effect, Rome v. Archer (Sup.Ct.Del.) 197 A.2d 49.
While the defendants Rady and Draft were not parties to the earlier litigation, Rady become a director of Waltham in February 1959 and Draft was elected a director on April 17, 1959. They could in no possible way be held liable to their corporation on plaintiff's theory of his case other than by reason of their participation in the steps taken towards acquisition of and payment for the Axlers' Waltham shares. Such transaction having been an integral part of the prior complaints and the claims thereon having been dismissed, the judgments therein entered enure to the benefit of the defendants Rady and Draft as well as to the benefit of the Aronsons, Coca-Cola Co. v. Pepsi-Cola Co., 6 W.W. Harr. 124, 36 Del. 124, 172 A. 260.
On notice, an order will be entered granting the motion of the appearing defendants for summary judgment of dismissal of plaintiff's first and second causes of action.
NOTES
[1] Supreme Court of the State of New York, County of New York, Index No. 9411-1959.
[2] Fistel v. Axler and Pohl v. Axler.
[3] At the argument on defendants' motion, counsel for plaintiff stated that the premium was actually 2.5 Swiss francs and that the figure of 2.4 set forth in the complaint was a typographical error. See also affidavit of James A. Thomas, Jr., in opposition to defendants' motion.
[4] Supreme Court of the State of New York, County of New York, Index No. 9411-1959.