Donald **AUFDERHAR, Jr. Appellant,**

v.

**DATA DISPATCH, INC. and John Schuck, Respondents,**

and

**Westfield Insurance Companies, Intervenor.**

**No. C7–88–2006.**

Supreme Court of Minnesota.

March 9, 1990.

John W. Wood, Jr., Johnson, Wood, Phleger & Bigelow, Wayzata, for appellant.

Wayne J. Studer, Brian G. Larson, Larry J. Peterson & Associates, St. Paul, for respondents.

KELLEY, Justice.

The question presented by this case is whether a defendant in a common law motor vehicle negligence action may invoke the doctrine of collateral estoppel to prevent the common law plaintiff from relitigating the amount of his personal injury damage claim when that precise issue had been previously determined in an uninsured motorist arbitration hearing between the plaintiff and the uninsured motorist insurance carrier. We hold that within the factual posture presented by this case the plaintiff may be collaterally estopped.

The material facts are not in dispute. On a March day in 1985 in bad weather, appellant Donald Aufderhar, Jr., was involved in a three-car accident on a ramp leading from the Rosedale Shopping Center. As it proceeded immediately ahead of the Aufderhar car, an unidentified vehicle spun out of control and blocked ramp traf-

fic. The identity of the operator of that vehicle has never been ascertained. Although Aufderhar was able to stop without striking that vehicle, a Data Dispatch vehicle, operated by respondent John Schuck, was unable to stop before it struck the Aufderhar car and pushed it forward enough to make light contact with the unidentified vehicle. Shortly after, the unidentified driver of the vehicle, which had originally skidded causing the problem, departed from the scene.

Aufderhar carried uninsured motorist insurance with Westfield Insurance Companies (Westfield) on the vehicle he was driving. In due course Aufderhar submitted a claim to Westfield seeking recovery of uninsured motorist benefits. Simultaneously, he commenced this common law personal injury negligence action against respondents Data Dispatch and Schuck. After Westfield initially refused Aufderhar's request for binding arbitration under the policy, with denial based on a provision contained in the uninsured motorist coverage, Aufderhar applied for and obtained an order from the Hennepin County District Court mandating arbitration.

The trial of this personal injury action was originally scheduled for May 16, 1988, but unavailability of judges delayed the trial until August 16, 1988. Meanwhile, on May 18, respondents Data Dispatch and Schuck tendered an offer of judgment for $15,000 plus costs which Aufderhar rejected.

The arbitration hearing before a panel of three lawyers specializing in the handling of personal injury litigation was held on May 25, 1988. The arbitrators unanimously found the unidentified phantom driver to be 10 percent causally negligent; Schuck to be 90 percent causally negligent; assessed Aufderhar's personal injury damages at $15,000; and ordered Westfield to pay the entire amount to Aufderhar, which it subsequently did. This was in addition to no-fault benefits of approximately $12,000 already paid.

Thereafter, in this court negligence action, respondents Schuck and Data Dispatch just before trial moved *in limine* for an order that Aufderhar be collaterally estopped from relitigating the amount of damages issue. The trial court granted the motion, and later, after subrogation issues between Westfield and Data Dispatch had been settled, dismissed the action. Aufderhar appealed. The court of appeals panel affirmed the trial court. *Aufderhar v. Data Dispatch*, 437 N.W.2d 679 (Minn.App. 1989).

▮▮▮ Collateral estoppel, sometimes referred to as issue preclusion, precludes parties from relitigating issues which are identical to issues previously litigated and which were necessary and essential to the former resulting judgment. *Ellis v. Minneapolis Comm'n on Civil Rights*, 319 N.W.2d 702, 704 (Minn.1982). Although some jurisdictions require "mutuality" of parties in cases involving previously determined litigation as a predicate to the invocation of collateral estoppel, Minnesota does not. Even though a defendant in the proceeding before the court was not a party to the earlier proceeding, Minnesota permits a defendant to invoke collateral estoppel in the subsequent litigation commenced by a plaintiff who also had been the claimant in the earlier proceeding provided four requirements have been established:

> (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Ellis*, 319 N.W.2d at 704 (quoting *Victory Highway Village, Inc. v. Weaver*, 480 F.Supp. 71, 74 (D.Minn.1979)).

▮▮▮ In this case, Data Dispatch and Schuck, who seek to invoke collateral estoppel, were strangers to the arbitration proceeding between Aufderhar and Westfield. So, too, was the defendant in *Johnson v. Consolidated Freightways, Inc.*, 420 N.W.2d 608 (Minn.1988), a stranger to an arbitration between an insured and his uninsured motorist insurer. In that case Robert Lundquist sustained personal injuries and his wife Karen Kay Lundquist died

as the result of an automobile accident when the car being operated by Robert Lundquist struck a tire rim on the highway. Because the owner of the tire rim was unknown, Robert Lundquist submitted his own claim arising from his injuries to arbitration with the uninsured motorist insurer of the vehicle he had been driving. Arlene Johnson, trustee for the heirs of Karen Lundquist, also filed an uninsured motorist claim. The parties settled, and the court ordered distribution to Robert Lundquist. He proceeded with his arbitration, and the arbitrators found him 20 percent at fault and the unidentified rim owner 80 percent at fault. Subsequent to the award, authorities were able to establish that Consolidated Freightways was the owner of the rim. Trustee Johnson then commenced a common law negligence death by wrongful act action against Consolidated Freightways. Before trial, Robert Lundquist died. The issue there was whether the plaintiff-trustee was collaterally estopped from relitigating the issue of comparative fault which had been decided during the insurance arbitration. We held that the facts of that case precluded the application of collateral estoppel. The basis of our rejection in *Consolidated Freightways* was that the decedent-plaintiff had not been afforded a "full and fair opportunity to be heard on the adjudicated issue"—the crucial fourth prong of the Ellis test—due primarily to the fact that the comparative fault allocation in the arbitration proceeding was based upon only a part of the facts pertinent to a resolution of that issue. However, in *Consolidated Freightways* we specifically declined to hold that collateral estoppel might never be applied to estop relitigation of an issue previously determined in arbitration. *Consolidated Freightways*, 420 N.W.2d at 613.

Appellant suggests that *Consolidated Freightways* supports his contention that an arbitration award is not a "prior adjudication." Most courts have considered an arbitration award to constitute a "prior adjudication" for purposes of triggering an

estoppel. *See, e.g., United Food and Commercial Workers Int'l Union—Indus. Pension Fund v. G. Bartusch Packing Co.*, 546 F.Supp. 852, 855 (D.Minn.1982). We, likewise, have afforded to an arbitration award finality as to both facts and the law. *State, by Sundquist v. Minnesota Teamsters Public and Law Enforcement Employees Union Local No. 320*, 316 N.W.2d 542, 544 (Minn.1982); *Grudem Bros. Co. v. Great Western Piping Corp.*, 297 Minn. 313, 316–17, 213 N.W.2d 920, 922–23 (1973).[1] Even in *Consolidated Freightways*, after we first observed that collateral estoppel had been applied to prevent relitigation of issues decided in other types of proceedings, which, like arbitration, are less structured and formal than traditional court actions, we further acknowledged that "arbitration is meant to be a final judgment of both law and fact." *Consolidated Freightways*, 420 N.W.2d at 613.

Had the responsible party been present at the arbitration in *Consolidated Freightways* (the trucking company), it could, and probably would have presented relevant evidence on the comparative fault issue. In contrast, here the presence of Schuck and Data Dispatch was neither necessary nor, perhaps, even relevant to Aufderhar's full and complete presentation of damage evidence in the arbitration proceeding. Indeed, had they been present in the arbitration proceeding, their participation might well have resulted in a lower damage award. Additionally, we note that Aufderhar received all of his personal injury damages from Westfield even though the arbitrators found that the unidentified and uninsured motorist was only 10 percent causally negligent. Finally, the damages awarded resulted from an arbitration originally initiated by Aufderhar, insisted upon by Aufderhar in the face of objection by Westfield, and concluded only after Aufderhar had secured a district court order compelling it. *See Lysholm v. Liberty Mut. Ins. Co.*, 404 N.W.2d 19, 21 (Minn.

---

1. Recently, albeit in a different context, we treated a former arbitration award as being similar to a "prior adjudication." *L & H Airco,*

*Inc. v. Rapistan Corp.*, 446 N.W.2d 372 (Minn. 1989).

App.1987) ("plaintiffs by acquiescing in and participating in the [arbitration] proceeding in effect represented that the contract provision for arbitration was in force, that the dispute was arbitrable, and that the parties would be bound by the decision * * *.") (quoting *Twomey v. Durkee*, 291 N.W.2d 696, 699 (Minn.1980)). Here, the arbitration clause in Aufderhar's uninsured motorist coverage provided that the arbitration award would be "binding * * * as to the amount of damages." Both the damages issue, and the party to be estopped, Aufderhar, were identical in the arbitration and at trial. Thus, we conclude that if appellant was afforded a full and fair opportunity to present evidence on the damage issue before the arbitrators, he should now be estopped to present evidence on the damage issue before the arbitrators, he should now be estopped from relitigating that identical issue in this court case. To so hold is consistent with the *Restatement (Second) Judgments* § 84 comment c (1982) (claims adjudicated in arbitration are precluded from later court actions). *Accord, Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1360 (11th Cir.1985); *Bailey v. Metro. Property & Liab. Ins. Co.*, 24 Mass.App. 34, 505 N.E.2d 908, 910–12, *rev. denied*, 400 Mass. 1101, 508 N.E.2d 620 (1987).

But was Aufderhar afforded a full and fair opportunity to present evidence on the amount of damage issue? We are left with no doubt that he was. Before the arbitration panel Aufderhar was represented by the same attorney as at trial. His attorney, in essence, concedes that full opportunity to provide evidence relative to damages was afforded and that the evidence he had relative to the issue was presented. The arbitration clause provided for arbitration under legal rules of procedure and evidence. The case was heard by experienced personal injury attorneys. No claim

is made that Aufderhar was denied the opportunity to present any damage evidence or rebuttal of any contrary evidence. No facts in the record lend substance to any assertion to the contrary. Therefore, in our view, this is a proper case calling for estoppel from any attempt to relitigate that issue.

Nor is it material that Data Dispatch and Schuck were not parties to the arbitration. As previously noted, Minnesota rejects the "mutuality" requirement some jurisdictions have imposed upon the use of collateral estoppel. Instead, Minnesota focuses upon whether the party sought to be estopped was the claimant on the issue in both proceedings.[2] Our rationale for abandonment of the "mutuality" rule is set forth in *Gammel v. Ernst & Ernst*, 245 Minn. 249, 72 N.W.2d 364 (1955).

[A] plaintiff, who has selected his forum and presented his proof on an issue is bound by the judgment rendered therein on such issue in any subsequent action, even though against another party, since public policy should not permit retrial of an issue each time a new defendant can be found. * * *

* * * 'The requirement of mutuality must yield to public policy. To hold otherwise would be to allow repeated litigation of identical questions, expressly adjudicated, and to allow a litigant having lost on a question of fact to re-open and re-try all the old issues each time he can obtain a new adversary not in privity with his former one.'

*Gammel*, 245 Minn. at 257–58, 72 N.W.2d at 369 (quoting *Coca Cola v. Pepsi Cola*, 36 Del. 124, 133, 172 A. 260, 263 (Del.Super.Ct.1934)).

In this case, the "claimant" in the arbitration, and the plaintiff at trial are one and the same. Because it is clear Aufderhar was afforded "a full and fair opportuni-

---

**2.** We observe that appellant, and to some extent, the respondents, erroneously refer to the attempt here to invoke collateral estoppel as being so-called "offensive" collateral estoppel. *See, e.g., Parklane Hoisery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). An offensive estoppel is one where the plaintiff seeking to invoke it uses it to establish an issue in the

second action on which it has the burden of proof. Here, respondents do not have the burden of proof on the damages—rather the appellant does. Respondents seek to invoke the estoppel as a defense on the issue. This is, of course, traditional "defensive collateral estoppel" and is favored in the law. *See Parklane*, 439 U.S. at 329–30, 99 S.Ct. at 650–51.

ty to be heard" on the damage issue, we perceive no reason to deny the application of estoppel to prevent relitigation of that issue. To the contrary, to permit it here is entirely consistent with the public policy underlying this court's traditional encouragement of alternative forms of dispute resolution, as well as policies designed to promote judicial efficiency.

But, Aufderhar argues, to so hold runs counter to two of our cases which held that a *prior court action* did not have res judicata or collateral estoppel effect in a *later arbitration* proceeding. *See Milwaukee Mut. Ins. Co. v. Currier*, 310 Minn. 81, 245 N.W.2d 248 (1976); *Nat'l Indem. Co. v. Farm Bureau Mut. Ins. Co.*, 348 N.W.2d 748 (Minn.1984). We disagree. A close examination of each case demonstrates that the holding in neither, by analogy or otherwise, supports appellant's argument.

The issue in *Milwaukee Mutual* was whether the parties had agreed that the prior trial court adjudication would take the place of arbitration, and, therefore, had waived their contract right to arbitrate. Had they waived that right by their actions, no agreement to arbitrate would have existed resulting in lack of jurisdiction in the court to stay arbitration under Minn.Stat. § 572.09(b) (1988). We held the parties had not waived their contracted for arbitration right.

In *National Indemnity*, we expanded on that holding in a case where the right to arbitration arose by statute rather than from a contractual agreement. The dispute in *National Indemnity* related to indemnity between two insurers pursuant to Minn.Stat. § 65B.53, subd. 1 and 4 (1988). The statutes permit indemnification of a no fault automobile insurance carrier for benefits paid as a result of a collision by an at fault "commercial vehicle." We held that a judgment following a judicial proceeding did not extinguish the statutory right to arbitrate the issue because the statute bound the two insurers to arbitrate as had the insurance contract provision to arbitrate in *Milwaukee Mutual*. These issues of statutory and contractual obligations that existed in *Milwaukee Mutual* and *Na-*

*tional Indemnity* are not involved in this case. Here, Aufderhar's right to arbitrate was created by the contract between himself and his uninsured motorist insurer—a contract to which Schuck and Data Dispatch were strangers and which afforded them no rights to participate in the arbitration. Neither case relied upon by Aufderhar supports his argument.

Although the issue had not been raised in briefs nor in oral argument by either party, during the course of the oral argument, a question arose as to whether Aufderhar's insistance upon arbitration of, among other issues, the amount of damage issue had resulted in a waiver of any constitutional right he might have had to a jury trial on that issue. Under amendment VII to the United States Constitution, fact issues determined in previous equitable litigation by a judge sitting without a jury have been given preclusive effect in subsequent litigation involving jury issues, *see, e.g., Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 333–37, 99 S.Ct. 645, 652–54, 58 L.Ed.2d 552 (1979), even in the absence, as here, of mutuality of parties. *Id.* at 335–36, 99 S.Ct. at 653–54. Article I, section four of the Minnesota Constitution provides "[t]he right of trial by jury shall remain inviolate * * *" but likewise provides that right may be waived "in all cases in the manner prescribed by law." If not expressed affirmatively, the intent to waive a jury trial must appear by necessary inference from unequivocal acts or conduct. *Hasey v. McMullen*, 109 Minn. 332, 337, 123 N.W. 1078, 1080 (1909). The question then is whether Aufderhar, by insisting on arbitration of his uninsured motorist claim which included the amount of damage issue, waived the right to relitigate that specific issue in this later trial court action. We conclude that he did. As pointed out by the Court of Appeals for the Seventh Circuit "loss of the right to jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate." *Pierson v. Dean, Witter, Reynolds, Inc.*, 742 F.2d 334, 339 (7th Cir.1984). Likewise, the court of appeals held that a party who has submitted an issue to arbitration may not later claim the right to a trial on the same issue

against the same party. *Lysholm v. Liberty Mut. Ins. Co.*, 404 N.W.2d 19, 21 (Minn. App.1987). The precise issue here is whether a plaintiff who seeks, and even compels arbitration of a claim which includes an amount of damage issue, waives his right to a jury trial on that issue against defendants who were not parties to the arbitration. We perceive no reason why the same rationale of waiver would not apply in this instance as has been applied when a plaintiff seeks to relitigate the issue against a party to the arbitration by demanding a jury trial. In both instances, by insisting on arbitration of a claim which included the amount of damage issue and by failing to seek a continuance of the arbitration until the court action could be resolved, a necessary inference arises that plaintiff waived his right to a jury trial on *that issue* which was identical to a similar issue in the court case and on which the plaintiff had been afforded full opportunity to present all evidence he had to the arbitrators, and, in fact, did so. Therefore, we conclude that in these limited circumstances, Aufderhar waived his jury trial right respecting this amount of damage issue.

Although appellant failed to raise the issue in his petition for further review, in his brief and at oral argument he argues that the trial court erred in considering respondents' motion *in limine* just prior to the commencement of trial. We reject that assertion for two reasons: first, that issue is not properly before this court because not raised in the petition for further review; and, second, because the trial court's handling resulted in no unfairness to the appellant.

Generally, we may refuse to consider new issues independent of the affirmative relief requested in the petition for further review unless the claim has been included therein. *See Rambaum v. Swisher*, 435 N.W.2d 19, 24 (Minn.1989); *Hoyt Inv. Co. v. Bloomington Commerce and Trade Center Assocs.*, 418 N.W.2d 173, 175 (Minn. 1988). The relief requested by this belatedly asserted issue is independent of the substantive issue presented in the petition for further review. Therefore, we need not address it.

Moreover, even were we to address the issue, it appears that appellant's contention lacks merit. He argues that because collateral estoppel is an affirmative defense to be raised by answer, *see* Minn.R. Civ.P. 8.03, and because respondents had not raised the defense in their answer, it was improper for the trial court to address the issue when raised by the motion *in limine*. As noted by the court of appeals, the arbitration award was made May 25, 1988, almost two years after respondents had filed their answer in this case. Thus, the collateral estoppel issue did not arise at least up until that date. Although the record is not completely clear when the arbitrators delivered their award to counsel, it does suggest it was probably on July 18, 1988, less than a month before the rescheduled trial date. When Westfield moved to intervene in this action on August 12, 1988, four days before the scheduled trial date, the only means then available for raising the collateral estoppel issue was by a motion *in limine*. Also, Aufderhar was not prejudiced by its assertion at that time. Although he could have requested a trial continuance to prepare a written response, he did not do so, but, instead, chose to argue the motion orally. The record demonstrates that before deciding the issue, the trial court considered all the issues and precedents which appellant has asserted in the court of appeals and here. Thus, in our view, concurred in by the court of appeals panel, Aufderhar has failed to demonstrate any prejudice by the trial court's consideration of the estoppel issue on the motion *in limine* just prior to the scheduled trial.

Affirmed.

YETKA, Justice (dissenting).

I would reverse the court of appeals and find that the plaintiff is not barred by collateral estoppel from trying his action in the district court.

In *Johnson v. Consolidated Freightways, Inc.*, 420 N.W.2d 608, 613 (Minn. 1988), we declined to determine whether, as a matter of law, collateral estoppel applies to an issue determined in insurance arbitra-

tion. We did, however, determine that, even if the doctrine did apply, the facts in *Johnson* did not warrant estoppel. *Id.* at 613. We noted: "[N]either collateral estoppel nor res judicata is rigidly applied. * * * As a flexible doctrine, the focus is on whether its application would work an injustice on the party against whom estoppel is urged." *Id.* at 613–14.

Such an injustice is present here. Even if the parties to the arbitration waived a later trial, why should such waiver benefit third parties who were not parties to the original arbitration? Insurance carriers could abuse the ruling of the court in this case by placing mandatory arbitration clauses in insurance policies. If such clauses become standard, they could effectively deny the constitutional right to trial by jury: Plaintiffs would lose the option to litigate first and, therefore, the doctrine of collateral estoppel would preclude plaintiffs from presenting to a jury issues decided in arbitration. Although neither of the parties raised the issue of a potential denial of the right to a jury trial, we must bear it in mind in future cases.

Moreover, the majority allows arbitrated issues to have collateral estoppel effect in later litigation even though previously litigated issues do *not* have collateral estoppel effect in a later arbitration according to *Milwaukee Mutual Ins. Co. v. Currier*, 310 Minn. 81, 245 N.W.2d 248 (1976). As a practical consequence of this holding, plaintiffs who expect an unfavorable arbitration finding will maneuver to set trial before arbitration. That certainly would not save the court's time or the parties' money and, indeed, would defeat the very purpose of arbitration to serve as an alternative to litigation. Further, it seems basically unfair where, in a situation as here, the court trial, for some reason, is delayed until after the arbitration date, thus forcing plaintiffs to manuever to postpone the arbitration in order to avoid waiving their right to a jury trial on the issue of damages.

For all of these reasons, I would reverse the court of appeals.

WAHL, Justice (dissenting).

I join the dissent of Justice Yetka.