**PRICHARD BROTHERS, INC., et al., Respondents,**

v.

**The GRADY COMPANY, et al., Respondents,**

**Independent School District No. 353, Karlstad, Minnesota, Appellant.**

**No. C3–86–1530.**

Court of Appeals of Minnesota.

June 9, 1987.
Review Granted July 31, 1987.

Randolph E. Stefanson, Stefanson, Landberg, Plambeck & Geeslin, Moorhead, for Prichard Brothers, Inc., et al.

Harold G. Myhre, Myhre, Drenckhahn & Williams, P.A., Warren, for The Grady Co., et al.

Paul E. Stoneberg, Christianson, Stoneberg, Giles & Myers, P.A., Marshall, for Independent School Dist. No. 353, Karlstad.

Heard, considered, and decided by NIERENGARTEN, P.J., and PARKER and FOLEY, JJ.

## OPINION

FOLEY, Judge.

Respondents Prichard Brothers, Inc. and its owners, Harold B. Kertz and Robert J. Kertz, commenced this negligence action against respondents and cross-appellants Martin Grady and The Grady Company for damages arising out of delays in the completion of a construction project. The complaint was subsequently amended to include a claim against appellant Independent School District No. 353, Karlstad, Minnesota, based on negligent hire and retention and agency (vicarious liability), and for amounts due under a construction contract. Because we conclude that the parties' duties and remedies are imposed solely by contract and that as a matter of law the evidence fails to show that those duties were breached, we reverse and vacate the judgment against Grady and the School District.

## FACTS

This action arises out of a construction project. In March 1980, the School District contracted with Grady to provide architectural services in connection with construction of an addition to and the remodeling of a school building. The parties executed a standard American Institute of Architects (AIA) contract as owner and architect, which incorporated the AIA document governing general conditions.

In June 1981, the School District accepted a bid for the project submitted by Prichard Brothers. As owner and general contractor, these parties entered into a standard AIA contract for the general construction of the project which also incorporated the AIA general conditions. Construction began immediately and was scheduled to end in May or June 1982. Due to a series of delays, however, construction was not completed until October 10, 1982.

Prichard Brothers thereafter commenced this negligence action against Grady to recover increased costs and lost earnings. The School District was later brought into the action under an amended complaint. Trial eventually proceeded on the following counts in the second (and final) amended complaint: architect's negligence, agency, and a claim against the School District for the contract balance of $25,465. A fourth count alleging negligent hire and retention had been dismissed prior to trial in re-

sponse to a motion for partial summary judgment by the School District.

By special verdict, the jury found that both Prichard Brothers and Grady had been negligent, that Grady was *not* acting as an agent of the School District at the time of its negligence, that Grady's negligence was "the result of bad faith * * * or the result of his failure to exercise an honest judgment," and that Prichard Brothers was entitled to *no* damages on the contract balance of $25,465. The jury apportioned negligence between the parties (36% to Prichard Brothers and 64% to Grady), and concluded that Prichard Brothers suffered damages of $257,940, $165,081 of which "were the direct result of the negligence of * * * Grady done in bad faith or without an honest judgment."

Based on these responses, the trial court ordered that the claims against the School District (all of which were based on vicarious liability) be dismissed. Judgment was subsequently entered for Prichard Brothers against the Grady Company in the amount of $165,081.00.

Prichard Brothers then moved for judgment notwithstanding the verdict "on the ground that the law and the evidence presented does not support the jury's negative response to question seven of the Special Verdict regarding the question of agency." Grady also moved for JNOV or a new trial, or in the alternative for remittitur. The trial court subsequently denied Grady's motions, but granted Prichard Brothers' motion for JNOV and concluded that Grady was an agent of the School District as a matter of law and that the School District was therefore vicariously liable for his negligence. An amended judgment was accordingly entered jointly and severally against the Grady Company, Martin Grady individually, and the School District for $165,081 in damages together with prejudgment interest of $28,317.04.

The School District thereafter moved for a new trial and for judgment on its crossclaim for indemnity. The trial court denied the motion for a new trial, but granted the School District indemnity from Grady. A second amended judgment was entered.

These appeals followed.

## ISSUE

Did the trial court properly allow this case to proceed on a negligence theory?

## ANALYSIS

■ Prichard Brothers' claims of negligence centered around Grady's actions in three general areas: 1) preparation of the plans and specifications for a roof expansion joint and finish hardware; 2) interpretation of specifications and response to shop drawings submitted; and 3) inspection of the project site. In rulings during trial and in its post-trial memoranda, the trial court correctly noted that the evidence established that Grady had been negligent, if at all, only with respect to the interpretation and response to shop drawings. Prichard Brothers conceded during trial that it was not claiming negligent preparation of plans and specifications, and the testimony of its own witnesses established that Grady's inspection of the site was appropriate and not unreasonable. The damages awarded were thus for delays allegedly caused by Grady's negligent interpretation of specifications and response to shop drawings.

To prevail in tort, it was necessary for Prichard Brothers to establish that Grady breached "some duty imposed by law, not merely one imposed by contract." *D & A Development Co. v. Butler*, 357 N.W.2d 156, 158 (Minn.Ct.App.1984) (quoting *Keiper v. Anderson*, 138 Minn. 392, 398, 165 N.W. 237, 238 (1917)). Tort duties are independent of contract:

> The fundamental difference between tort and contract lies in the nature of the interests protected. Tort actions are created to protect the interest in freedom from various kinds of harm. The duties of conduct which give rise to them are imposed by law, and are based primarily upon social policy, and not necessarily upon the will or the intention of the parties. * * * Contract actions are created to protect the interest in having

promises performed. Contract obligations are imposed because of conduct of the parties manifesting consent * * *. *D & A Development,* 357 N.W.2d at 158 (quoting W. Prosser, *Handbook of the Law of Torts* § 92, at 613 (4th ed. 1971)).

A definite conflict exists between tort and contract principles in the area of construction litigation. At least one commentator has concluded that tort theories are inappropriate to resolution of these disputes, particularly where the parties' duties are imposed by contract and represent negotiated limitations and remedies. Espel, *Liability and Loss Allocation for Economic Losses in Construction Litigation Involving Design Professionals,* 13 Wm. Mitchell L.Rev. 81 (1987).

While the Minnesota Supreme Court has never squarely decided whether these types of claims for economic loss involving design professionals sound in contract or tort, it has been disinclined to allow tort theories to supersede rules of contract law in other commercial settings. *Superwood Corp. v. Siempelkamp Corp.,* 311 N.W.2d 159 (Minn.1981) (distinction made between economic losses and injury to person or property in context of product liability claims). Recent cases have rejected negligence or strict liability theories where the sale of goods and the provision of services is involved, and have held that such cases are governed by the Uniform Commercial Code and the principles of *Superwood. See Valley Farmers' Elevator v. Lindsay Brothers Co.,* 398 N.W.2d 553 (Minn.1987); *McCarthy Well Co. v. St. Peter Creamery, Inc.,* 389 N.W.2d 514 (Minn.Ct.App.), *pet. for rev. granted,* (Minn. Aug. 20, 1986).

At various times during these proceedings, both Grady and the School District have argued that the gravamen of the complaint is strictly contractual and that Prich-

ard Brothers should not be allowed to convert this contract claim into a tort action.[1] The trial court rejected these arguments based on *Waldor Pump & Equipment Co. v. Orr-Schelen-Mayeron & Associates, Inc.,* 386 N.W.2d 375 (Minn.Ct.App.1986). In *Waldor Pump,* this court concluded that a design engineer owed a duty to a subcontractor to reasonably draft and interpret project specifications, and that the engineer could be liable in negligence to that subcontractor, a third party who forseeably relied on its professional services. *Id.* at 377. *D & A. Development* was distinguished on the basis that it only alleged breach of a contractual duty to complete plans by a specified date, while the engineer in *Waldor Pump* performed its contract but breached a tort duty owed to draft specifications in a professional manner. Although *Waldor Pump* expressly states that a contract existed between the subcontractor and the general contractor and implies that a contract also existed between the general contractor and the city and one between the city and the engineer, those contracts were not mentioned further.

Accordingly, we find it distinguishable on this basis from the facts of this case. Here, Grady's duties are defined by reference to the terms of the contract (as evidenced by the jury instructions), and Prichard Brothers' claim is based on a breach of those contractual duties (as evidenced by its complaint). Where, as in this case, the parties' duties and remedies are imposed by contract, we decline to read *Waldor Pump* as holding that a cause of action necessarily exists in negligence. *See Zontelli & Sons, Inc. v. City of Nashwauk,* 373 N.W.2d 744, 751 (Minn.1985).

We thus hold that as a matter of law this case is governed by contract and not tort

---

1. Prior to trial, both parties had moved for partial summary judgment on this issue. Following submission of Prichard Brothers' evidence, the School District moved for a directed verdict, arguing that any liability on its part is contractual. Grady also moved for a directed verdict, arguing that there was insufficient evidence of negligence to submit the issue to the jury. The jury instructions contain several references to the contract provisions; in particular

the jury was instructed that "[i]n determining whether or not the parties used reasonable care, you may consider the duties and obligations, and rights and responsibilities that the parties assumed under the terms and conditions of the contracts they entered into." Both parties also filed extensive post-trial motions. On appeal, the School District continues to argue that Prichard Brothers' claim lies in contract.

law. It was error to allow Prichard Brothers to circumvent its contract with the School District based on a vicarious liability or agency theory. It was also error to hold Grady liable in tort where any duty he owes to Prichard Brothers is imposed by contract. While at this point we could remand the matter to the trial court to allow amendment of the complaint and further proceedings, we believe that substantial justice can be achieved by addressing possible contract claims here. *Zontelli*, 373 N.W.2d at 751; *Lesmeister v. Dilly*, 330 N.W.2d 95, 102 (Minn.1983).

■ As a third party beneficiary of the Grady/School District contract, Prichard Brothers had the right to enforce duties Grady assumed in its contract with the School District. Consideration of whether Grady breached its duty of architectual interpretation requires an initial examination of the contract between the parties to determine the parameters of that duty. *Moundsview Independent School District No. 621 v. Buetow & Associates, Inc.*, 253 N.W.2d 836, 839 (Minn.1977). The AIA general conditions (which are incorporated into the Grady/School District contract and into the Prichard Brothers/School District contract) provide in relevant part:

2.2.7 The Architect will be the interpreter of the requirements of the Contract Documents and the judge of the performance thereunder by both the Owner and Contractor.

2.2.8 The Architect will render interpretations necessary for the proper execution or progress of the Work, with reasonable promptness and in accordance with any time limit agreed upon. * * *.

\* \* \* \* \* \*

2.2.10 *All interpretations and decisions* of the Architect *shall be consistent with the intent of and reasonably inferable from the Contract Documents* and

will be in writing or in the form of drawings. *In his capacity as interpreter and judge,* he will endeavor to secure faithful performance by both the Owner and the Contractor, will not show partiality to either, and *will not be liable for the result of any interpretation or decision rendered in good faith* in such capacity.

\* \* \* \* \* \*

2.2.13 The Architect will have *authority to reject Work* which does not conform to the Contract Documents. * * * However, *neither the Architect's authority to act* under this Subparagraph 2.2.13, *nor any decision made by him in good faith* either to exercise or not to exercise such authority, *shall give rise to any duty or responsibility of the Architect to the Contractor,* any Subcontractor, any of their agents or employees, or any other person performing any of the Work.

2.2.14 The Architect will review and approve or take other appropriate action upon Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for conformance with the design concept of the Work and with the information given in the Contract Documents. Such action shall be taken with reasonable promptness so as to cause no delay.

(Emphasis added.)

By the plain language of the contract in this case, Grady is not liable for any interpretation rendered in good faith which is consistent with the intent of and reasonably inferable from the contract. Our review of the record reveals no evidence which would suggest that Grady did not act in good faith.[2] Indeed, the trial court accurately stated in one of its post-trial memoranda that Grady's conduct did not "rise to the level of intentionally deceitful

---

**2.** The jury instructions and the special verdict questions erroneously commingle the concepts of negligence and bad faith (which became an issue when Grady was allowed to amend his answer after the trial court determined that he was acting as an arbiter at all times relevant to this action and that he was entitled to immunity in the absence of bad faith.) Although the jury instructions on the definition of bad faith and negligence were not objected to, the School District did object to the wording of the special verdict questions. On appeal, both the School District and Grady argue that the verdict is unsupported by the evidence and is suspect due to this commingling of the concepts of bad faith and negligence.

or dishonest conduct." *Florenzano v. Olson,* 387 N.W.2d 168, 173 (Minn.1986) (bad faith is not equivalent to negligence and requires more of a fraudulent intent).

Nor is there any evidence to suggest that Grady's interpretations were inconsistent with the terms of the contract. Uncontroverted expert testimony presented by Grady established that his responses were timely and reasonable in every respect. Although the burden was clearly on Prichard Brothers to establish breach of the contractual duties, it relied solely upon the testimony of non-architects to establish this fact. Where a professional is accused of failing to properly interpret specifications and its actions are not elementary or a matter of common knowledge, performance or nonperformance under contract should be established by a qualified expert. As a matter of law, the evidence is insufficient to establish that Grady failed to perform his contractual duties.

We need not address the remaining issues raised by the parties, including whether the damages were supported by the evidence and whether indemnity was properly ordered.

### DECISION

We reverse with directions to vacate the second amended judgment, and dismiss the action with prejudice.

Reversed and judgment vacated.