PRICHARD BROTHERS, INC., et al., Respondents,

v.

The GRADY COMPANY, et al., Respondents,

Independent School District No. 353, Karlstad, Minnesota, Appellant.

No. C3–86–1530.

Court of Appeals of Minnesota.

Feb. 28, 1989.

Review Denied May 2, 1989.

Randolph E. Stefanson, Todd W. Foss, Stefanson, Landberg & Plambeck, Moorhead, for respondents Prichard Bros., Inc.

Harold G. Myhre, Myhre, Drenckhann & Williams P.A., Warren, for respondents The Grady Co.

Paul E. Stoneberg, Christianson, Stoneberg, Giles & Myers, P.A., Marshall, for Independent School Dist. No. 353, Karlstad, Minn.

Heard, considered and decided by NIERENGARTEN, P.J., and PARKER and FOLEY, JJ.

## OPINION

FOLEY, Judge.

This case was originally decided by our court in *Prichard Brothers, Inc. v. Grady Co.*, 407 N.W.2d 423 (Minn.Ct.App.1987), *rev'd* 428 N.W.2d 391 (Minn.1988). There, we held that where the duties of parties involved in a construction project are imposed by contract and where the damages sought are solely economic losses resulting from alleged breach of those duties, it was

error to allow the case to proceed on a negligence theory.

In reversing this decision, the Minnesota Supreme Court held that a general contractor may assert a claim against an architect for the architect's negligence in overseeing a building project. The supreme court remanded the matter to this court "to resolve undecided issues relating to the sufficiency of the evidence or to the vicarious liability of the school." *Prichard*, 428 N.W.2d at 392.

The trial court granted judgment notwithstanding the verdict in favor of respondents Prichard Brothers, Inc. and its owners, Harold B. Kertz and Robert J. Kertz, and upheld the award of damages, including bad faith damages. The trial court denied the motion of appellant Independent School District No. 353, Karlstad, Minnesota for a new trial but granted the School District indemnity from respondents Martin Grady and The Grady Company. We affirm in part, reverse in part and remand to the trial court for proceedings consistent with this opinion.

## FACTS

The facts, as stated in our original opinion in *Prichard*, are as follows. This action arises out of a construction project. In March 1980, the School District contracted with Grady to provide architectural services in connection with construction of an addition to and the remodeling of a school building. The parties executed a standard American Institute of Architects (AIA) contract as owner and architect, which incorporated the AIA document governing general conditions.

In June 1981, the School District accepted a bid for the project submitted by Prichard Brothers. As owner and general contractor, these parties entered into a standard AIA contract for the general construction of the project which also incorporated the AIA general conditions. Construction began immediately and was scheduled to end in May or June 1982. Due to a series of delays, however, construction was not completed until October 10, 1982.

Prichard Brothers thereafter commenced this negligence action against Grady to recover increased costs and lost earnings. The School District was later brought into the action under an amended complaint. Trial eventually proceeded on the following counts in the second (and final) amended complaint: architect's negligence, agency, and a claim against the School District for the contract balance of $25,465. A fourth count alleging negligent hire and retention had been dismissed prior to trial in response to a motion for partial summary judgment by the School District.

By special verdict, the jury found that both Prichard Brothers and Grady had been negligent, that Grady was *not* acting as an agent of the School District at the time of its negligence, that Grady's negligence was "the result of bad faith * * * or the result of his failure to exercise an honest judgment," and that Prichard Brothers was entitled to *no* damages on the contract balance of $25,465. The jury apportioned negligence between the parties (36% to Prichard Brothers and 64% to Grady) and concluded that Prichard Brothers suffered damages of $257,940, $165,081 of which "were the direct result of the negligence of * * * Grady done in bad faith or without an honest judgment."

Pursuant to this special verdict, the trial court ordered that the claims against the School District (all of which were based on vicarious liability) be dismissed. Judgment was subsequently entered for Prichard Brothers against the Grady Company in the amount of $165,081.

Prichard Brothers then moved for judgment notwithstanding the verdict "on the ground that the law and the evidence presented does not support the jury's negative response to question seven of the Special Verdict regarding the question of agency." Grady also moved for JNOV or a new trial, or in the alternative for remittitur. The trial court subsequently denied Grady's motions, but granted Prichard Brothers' motion for JNOV and concluded that Grady was an agent of the School District as a matter of law and that the School District was therefore vicariously liable for

his negligence. An amended judgment was accordingly entered jointly and severally against the Grady Company, Martin Grady individually, and the School District for $165,081 in damages together with prejudgment interest of $28,317.04.

The School District thereafter moved for a new trial and for judgment on its cross-claim for indemnity. The trial court denied the motion for a new trial but granted the School District indemnity from Grady. A second amended judgment was entered.

## ISSUES

1. Did the trial court err in granting JNOV and in concluding that Grady was the agent of the School District as a matter of law?

2. Did the trial court err in allowing the issue of negligence to go to the jury in the absence of expert testimony?

3. Were the concepts of bad faith and negligence erroneously equated by the jury instructions and the special verdict questions and was the verdict on this issue supported by the evidence?

4. Was the jury's damage award supported by the evidence?

## ANALYSIS

■ 1. "A motion for judgment notwithstanding the verdict will not be granted as long as there is 'ANY competent evidence reasonably tending to support the verdict.'" *Johnson v. Alford & Neville, Inc.*, 397 N.W.2d 591, 592 (Minn.Ct.App. 1986) (quoting *Thorn v. Glass Depot*, 373 N.W.2d 799, 802 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Nov. 1, 1985) (emphasis in original) (citation omitted)). "The evidence must be viewed in a light most favorable to the verdict." *Johnson*, 397 N.W.2d at 592 (citing *Thorn*, 373 N.W.2d at 802).

■ Here, the jury found by their answer to question # 7 of the special verdict form that Grady was not acting as the School District's agent at the time of his negligence. The trial court, however, in granting JNOV changed the jury's answer from no to yes, and held that as a matter of

law Grady was an agent of the School District and under that theory, provided for joint and severable liability in favor of Prichard Brothers and against Grady and the School District.

Key to our determination on the issue of agency is whether Grady was acting as an agent of the School District at the time of his negligence. In our original decision, we stated:

Prichard Brothers' claims of negligence centered around Grady's actions in three general areas: 1) preparation of the plans and specifications for a roof expansion joint and finish hardware; 2) interpretation of specifications and response to shop drawings submitted; and 3) inspection of the project site. In rulings during trial and in its post-trial memoranda, the trial court correctly noted that the evidence established that Grady had been negligent, if at all, only with respect to the interpretation and response to shop drawings. Prichard Brothers conceded during trial that it was not claiming negligent preparation of plans and specifications, and the testimony of its own witnesses established that Grady's inspection of the site was appropriate and not unreasonable. *The damages awarded were thus for delays allegedly caused by Grady's negligent interpretation of specifications and response to shop drawings.*

*Prichard*, 407 N.W.2d at 425 (emphasis added).

In granting JNOV on this issue, the trial court relied upon contract provisions that provided Grady was to be the School District's "representative" during the construction phase. It reasoned:

While * * * Grady was to make an independent judgment regarding compliance with plans and specifications, his decisions were final only with regard to artistic effects. Otherwise, the owner/school district was empowered to approve changes and to authorize final acceptance of the work. Grady was only their "representative" with regard to such matters.

This ruling, however, is contrary to a separate ruling in which the trial court held that as a matter of law Grady was acting as an "umpire or arbiter" at all times relevant to Prichard Brothers' claims.

These two rulings by the trial court are irreconcilable. Although the trial court indicated that it was relying upon the contracts, it effectively ignored language indicating that Grady was only a representative of the School District "to the extent provided" in the contracts. The trial court's rationale behind its umpire/arbiter ruling was based on the following provision in the AIA Owner/Architect agreement:

> **1.1.16** The Architect shall be, in the first instance, *the interpreter* of the requirements of the Contract Documents and the *impartial judge* of the performance thereunder by both the Owner and the Contractor. The Architect shall make decisions on all claims of the Owner or Contractor relating to the execution and progress of the Work and on all other matters or questions related thereto. The Architect's decisions in matters relating to artistic effect shall be final if consistent with the intent of the Contract Documents.

(Emphasis added.) In addition, the trial court relied on the following provision from the AIA General Provisions of the Contract for Construction:

> **2.2.7** The Architect will be the *interpreter* of requirements of the Contract Documents and the *judge* of the performance thereunder by both the Owner and Contractor.

(Emphasis added.)

These provisions clearly establish that Grady was not the representative or agent of the School District at *all* times during the construction phase. In his capacity as interpreter of the documents, he acted independently; in his capacity as judge of performance by both the owner and the contractor, he also acted independently. Under the contracts, the School District did not have the final decision, or have the right to control Grady's actions in his interpretation of contract documents or in his responses to shop drawings.

The trial court's umpire/arbiter ruling, which is consistent with the contract provisions, was reflected in its final instructions to the jury:

> When a contract provides that *an architect shall be an umpire or arbiter* as to the work or materials, *his acts and decisions in that regard are conclusive* in the absence of such a gross mistake as would imply bad faith or a failure to exercise an honest judgment.

(Emphasis added.) The trial court further instructed the jury:

> An agent is one obtained by a principal to perform services for him and whose physical conduct in the performance of the services is subject to the right of control by the principal.
>
> An independent contractor, by contrast, is one who agrees to perform a service for a principal, but whose physical conduct in the performance of the service is not subject to the right of control by the principal.

Applying these instructions to the evidence, the jury reached the conclusion that Grady was not acting as an agent of the School District.

We hold that the evidence and contract provisions support the conclusion that at all times relevant to the claims of negligence, Grady was acting as an arbiter or umpire. Viewing the evidence in the light most favorable to the verdict, and after considering the trial court's jury instructions and rulings, we hold that the trial court erred in granting JNOV on this issue.

Since the evidence establishes that Grady was not acting as an agent at the time of his negligence, the question of vicarious liability becomes moot. Likewise, the need to discuss Grady's claim that the trial court erred in granting the School District indemnity as well as the School District's claim that its liability should not exceed $100,000 under Minn.Stat. § 466.04, subd. 1(a) (1982) is eliminated.

2. The determination of whether a witness is sufficiently qualified to testify as an expert is left to the discretion of the trial court, whose ruling will not be re-

versed unless it is based upon an erroneous view of the law or is clearly not justified by the evidence. *Hueper v. Goodrich*, 263 N.W.2d 408, 411 (Minn.1978).[1]

The standard of reasonable care that applies to the conduct of architects is the same as that applied to lawyers, doctors, engineers and other professionals engaged in furnishing skilled services for compensation. *Gammel v. Ernst & Ernst*, 245 Minn. 249, 253, 72 N.W.2d 364, 367 (1955).

To reiterate, the claims of negligence involved only Grady's interpretation of plans and his response to shop drawings. At trial, Michael Spence, a licensed architect, testified on Grady's behalf. Spence testified that Grady's actions in the Karlstad project were completed with reasonable care and complied with the standards required of architects in Minnesota.

The evidence presented by Prichard Brothers to prove Grady's negligence consisted of testimony by Harold and Robert Kertz, a supplier and a subcontractor who had submitted shop drawings that were rejected by Grady, and the construction foreman. Prichard Brothers' only expert was Roger Heinrichs, a professional estimator and a certified engineering technician. Based on his experience, Heinrichs rendered opinions that the shop drawings submitted to Grady were proper and appropriate and should have been approved. Prichard Brothers' other witnesses testified that Grady's refusal to cooperate unduly delayed the project.

Both Grady and the School District argued that the issue of negligence should not go to the jury in the absence of testimony by a licensed architect. The trial court disagreed and ruled that it would allow Henrichs to testify in limited areas:

First of all, I think that non-expert testimony can come in in a case of profession-

al negligence, what we call a malpractice case, if the act of malpractice is so obvious that lay people can understand it. Now, one of the accusations here is that Mr. Grady simply didn't respond to the questions that were made by subcontractors and contractors, and I don't think we need expert testimony, if that in fact is the case, and I'm not obviously deciding facts, but we don't need expert testimony in that particular instance. * * *

Now, with regard to these plans and specifications, architects aren't drawing those in the abstract. I mean they are drawing those so that people who are not architects can read them and understand them and comply with them so they can build buildings, so that they can provide the physical items that need to be provided for the construction of buildings. And to the extent that those plans and specifications are intended to be read and responded to by nonarchitects, I would permit a nonarchitect to express an opinion as to those plans and specifications, and whether they say what they purport to say, and whether they are adequate for that nonarchitect to respond to them and to provide the services and materials that are required.

I agree with your point on the standard of care of an architect, and I'm not going to permit this witness—and again we are premature—but I'm not going to let this witness testify as to what the standard is for an architect under these circumstances. He's not an architect, and I'm not going to permit him to express an opinion as to what the requirements of an architect are. But I am going to permit him to express an opinion as to—based upon his experience and training—as to these plans and specifications, and what they say and what they

---

1. Our decision on this issue does not conflict with our previous statements in this case, which are now of questionable validity and have no precedential value following the supreme court's reversal. *See Prichard*, 407 N.W.2d at 428 ("Uncontroverted expert testimony presented by Grady established that his responses were timely and reasonable in every respect. Although the burden was clearly on Prichard Brothers to establish breach of the contractual

duties, it relied solely upon the testimony of non-architects to establish this fact. Where a professional is accused of failing to properly interpret specifications and its actions are not elementary or a matter of common knowledge, performance or nonperformance under contract should be established by a qualified expert. As a matter of law, the evidence is insufficient to establish that Grady failed to perform his contractual duties.")

don't say; and with regard to his experience regarding, you know, obtaining decisions on shop drawings and whatnot.

We agree with the trial court and find that Heinrichs was indeed qualified by his training and experience to testify. His qualifications include working for two large architectural firms where he was in charge of teams of draftsmen who produced plans such as the plans used in the Karlstad School project, experience in roof design, and ownership of a consulting firm which offers specialized construction services such as structural engineering, estimating, architectural technical services, and construction consulting services. Henrichs essentially performs the same services provided by architects. He works with 25 architectural firms on a regular basis in all areas of design services, and he testified that he had worked with thousands of sets of plans and specifications.

We concur with the trial court that Heinrichs was qualified to testify regarding Grady's interpretation of specifications and responses to shop drawings. All of the matters relating to Grady's negligence were within the scope of Heinrichs' expertise, and the trial court did not abuse its broad discretion in allowing his testimony. Ultimately, the weight of the total evidence was for the jury to decide.

■ 3. Both the School District and Grady argue that the verdict is unsupported by the evidence and is suspect due to the commingling of the concepts of bad faith and negligence. An examination of the trial court's jury instructions and the special verdict questions regarding bad faith is necessary to our review here.

The jury found Grady's negligence was the result of bad faith by its answer to question # 6:

6. Was the negligence of Martin Grady the result of bad faith by Martin Grady or the result of his failure to exercise an honest judgment?

Answer: (yes or no) yes

With respect to damages due to Grady's bad faith, the jury responded to question # 9:

9. What amount of the money damages included in your answer to Question No. 8 do you find were the direct result of the negligence of Martin Grady done in bad faith or without an honest judgment?

$165,081

The trial court's instruction to the jury on bad faith stated in part:

With regard to this question, [# 6] in Minnesota, when a contract provides that an architect shall be an umpire or arbiter as to the work or materials, his acts and decisions in that regard are conclusive in the absence of such a gross mistake as would imply bad faith or a failure to exercise an honest judgment.

\* \* \* \* \* \*

If, in accordance with the instructions on the special verdict form, you answer Question number 6, this is the meaning of the term "bad faith" that is included in Question number 6.

The term "bad faith" is a term that is difficult to exactly define. The term "bad faith" carries with it a suggestion of dishonest or deceitful conduct. It is action or a failure to act which demonstrates a significant disregard for the rights and economic interests of others. It is the absence of honest, intelligent action. It is acting or failing to act when there is no reasonable basis for such.

The trial court's jury instructions and the special verdict questions erroneously commingle the concepts of negligence and bad faith. Although the jury instructions on the definition of bad faith and negligence were not objected to, the School District did object to the wording of the special verdict questions.

It is clear that bad faith is not equivalent to negligence. Bad faith requires a fraudulent intent. *Florenzano v. Olson*, 387 N.W.2d 168, 173 (Minn.1986). Given the wording of the special verdict question, the jury easily could have been misled into believing that if Grady acted negligently (or without "honest judgment"), he was also acting in bad faith.

The trial court itself apparently misunderstood the meaning of bad faith. In a memorandum accompanying one of its post-trial orders, it stated:

> In the instant case, the *bad faith negligence* of Grady does not rise to the level of intentionally deceitful or dishonest conduct * * *.

(Emphasis added.)

██ We hold as a matter of law that the evidence does not support any finding of bad faith conduct by Grady. Grady may have been negligent in his interpretation of specifications and in his responses to shop drawings, but mere errors of judgment or negligence do not rise to the level of bad faith. The standard of care for architects carries with it the following latitude:

> The imposition of such standards does not leave them without adequate protection since their liability in damages arises only as the result of methods or practices in the performance of their work which indicate lack of reasonable care, fraud, or bad faith and since they are entitled to a wide discretion in the selection of such methods and in determining which of several practices or principles is most sound or best suited for the work undertaken by them.

*Gammel*, 245 Minn. at 253, 72 N.W.2d at 367 (citations omitted).

Given the defects in the special verdict questions as well as a review of the evidence, the jury's findings on this issue are not supported by the evidence. We are mindful that a jury's answer to a special verdict question should be set aside only if no reasonable mind could find as the jury did. *Belden Porter Co. v. Kimball Co., Inc.*, 303 Minn. 98, 99, 226 N.W.2d 310, 310 (1975). Here, there was no direct or circumstantial evidence presented to show that Grady acted in bad faith or with an intent to harm Prichard Brothers. In fact, the statement of the trial court quoted above illustrates that the evidence failed to show that Grady acted in bad faith.

Upon review of the total evidence, we sustain a finding of causal negligence against the architect Grady but reverse the finding of bad faith.

██ 4. "Generally an appellate court will not interfere with a damage award unless failure to do so would be shocking and result in injustice." *Anderson v. Blair*, 358 N.W.2d 708, 712 (Minn.Ct.App. 1984) (citing *Dawydowycz v. Quady*, 300 Minn. 436, 440, 220 N.W.2d 478, 480 (1974)). The trial court instructed the jury on damages as follows:

> Damages, to be recoverable, must not be speculative, remote or conjectural, but they do not have to be proved with mathematical precision, only to a reasonable, not absolute, certainty.

> When construction work is delayed as a direct result of negligence, the measure of damages is the reasonable worth and value of the work that was required by reason of the negligence and also the loss sustained as a direct result of the negligence. In answering this question, you are not to concern yourself with whose negligence directly caused the damages. * * *

> You are reminded that damages may not include money for work or materials that would otherwise have had to be provided under the terms of the contract. * * * Damages, thus, are limited only to those items that were required or lost as the direct result of the negligence you have found.

> Damages may include excess operating costs directly resulting from the negligence. These may include the cost of superintendents, overhead, increased costs of materials and labor, extra costs resulting from inability to complete work in an orderly manner, and a reasonable profit.

Grady and the School District argue that the verdict awarding damages is not supported by the evidence because the wrong measure of damages was used in the calculation. The verdict reflects that the jury accepted the "total cost" method of calculating damages, which involves deducting the contractor's actual costs from the amount of the pre-bid estimate. This method was approved by the trial court:

The measure of damages was not contested at this trial; rather, the negligence and causation questions were the principle focus of this litigation. Harold Kertz was permitted to summarize from his records the extra costs incurred because of the delay in completing the project. Such summary testimony is permitted under Rule 1006, M.R. of Evid. The books and records of the business were available for inspection and properly the subject of discovery. The numbers of exhibits submitted were voluminous and there was no need to introduce the books and business records of Prichard. Defendants did not contest the accuracy of the amounts claimed but rather contested whether such amounts were actually owing.

[Grady and the School District] contend that cost overruns were not the proper measure of damages. *The testimony regarding damages reflected that these were expenses actually incurred as a direct result of the delay.* Incidentally, some of such expenses were identical to a cost overrun computation. There is no error in admitting such evidence. *Layne–Minnesota v. Singer Co.,* 574 F.2d 429 (8th Cir.1978) *Moorhead Construction v. City of Grand Fords,* 508 F.2d 1008 (8th Cir.1975).

(Emphasis added.)

We agree that there was ample testimony from Prichard Brothers' witnesses which revealed that the damages sustained by Prichard Brothers were a direct result of delay caused by Grady's negligent interpretation of specifications and response to shop drawings. The measure of damages used by the trial court here was correct. Prichard Brothers was entitled to the "reasonable value of the work done including actual costs, overhead and profits" (total cost method). *Layne–Minnesota, Inc. v. Singer Co.,* 574 F.2d 429, 434 (8th Cir. 1978). We affirm the jury's compensatory damage award after applying the comparative fault percentage and removing all damages attributed to bad faith, leaving a balance of $92,859. This sum is supported by the books and business records of Prichard and is within the range of evidence offered at trial, after applying the trial court's instructions.

## DECISION

Upon review of the evidence, we sustain a finding of causal negligence against both Prichard Brothers and Grady under comparative negligence but reverse the finding of bad faith. We affirm the apportionment of negligence against Prichard Brothers and Grady and the percentage of fault allocated to each. We remand to the trial court for modification of the award of compensatory damages in the following manner. The entire amount of $165,081 attributed to bad faith conduct shall be deleted from the jury's total damage award of $257,940. Judgment therefore shall be entered in favor of Prichard Brothers in the amount of $92,859 against Grady only, and the trial court's award of interest shall be recalculated consistent with this opinion. The trial court is directed to enter judgment dismissing the action against the School District and awarding the School District costs and disbursements.

Affirmed in part, reversed in part and remanded.